## BUSH v. DAVIS.

### No. 12945.

Court of Civil Appeals of Texas. Dallas.

Dec. 21, 1940.

Rehearing Denied Jan. 18, 1941.

J. W. Hassell, Jr., and Pat H. Candler, both of Dallas, for appellant.

Leo R. Tresp, of Dallas, for appellee.

BOND, Chief Justice.

This suit, for an accounting, was instituted by Mrs. Vernon Davis, individually and as administratrix with will annexed of the estate of W. Glen Davis, deceased, against appellant J. E. Bush, doing business under the trade name of Texas Automatic Sprinkler Company. The account involves certain expenditures incurred on contracts entered into by Bush, or Texas Automatic Sprinkler Company, for construction of various and sundry U. S. Government-aided (P.W.A.) projects, including water works, sewer systems, gas installation, and other public utilities for various designated municipalities in Texas. This controversy grew out of the allocation of certain expenditures to the personal account of Davis, rather than to the joint account of Bush and Davis, and to Bush individually. The

specific items of receipts and disbursements are not in dispute; the allocation of such designated expenses is the determining feature of the contract, and when determined, the accounting problem can then easily be solved.

Plaintiff alleged that W. Glen Davis and the defendant Bush entered into a verbal contract; that Davis was to furnish such machinery as he then had on hand, consisting of drag lines, tractors, air compressors and other excavating tools, for construction of projects obtained by them; to compute and estimate the cost of construction; make and file bids acceptable to both parties; and "to superintend the construction under said contract"; and that Bush, or Texas Automatic Sprinkler Company, was to advance all necessary money for labor and materials; finance construction and furnish indemnifying and maintenance bonds required of them by cities and towns having work done. The net profits accruing from such contracts were to be divided equally between Davis and Bush, that is, 50% to Davis and 50% to Bush; and, in like manner, they were to bear any losses; such profits to be determined by the contract price of each job, and outlay of expenses for labor and materials used in such construction. Davis was to be allowed a drawing account of $50 per week, to be accounted for and charged to his half of the profits. It was further alleged that, in the event Davis should become unable to perform the duties incumbent upon him under the terms and conditions of the aforesaid agreement, or his services become unsatisfactory to Bush, then, in either case, Bush had the right to subrogate another, and all expenses incident to such subrogation would be charged to Davis and accounted for against his individual profits.

On November 15, 1935, W. Glen Davis died testate, leaving all his estate, including contracts outstanding with Bush and various municipalities, to his wife, Vernon Davis. Thereafter, plaintiff alleges, she and defendant Bush extended the agreement theretofore existing between her husband and Mr. Bush, to enable Mr. Bush to complete municipal contracts made prior to Davis' death, and agreed that she should share in all profits and losses on the same terms and conditions theretofore extended to her husband.

Defendant contended in pleadings and proof that salaries and expenses paid by him, or Texas Automatic Sprinkler Company, to employes to supervise work that Davis was obligated to do, and which was not done because of his death, were properly chargeable to the individual profits accruing to plaintiff, and not to the gross profits of the contracting parties. Such is the gravamen of this controversy. The verdict of the jury was, in effect, favorable to plaintiff and judgment rendered accordingly.

Without attempting to relate the testimony in detail, the chief points in controversy on the trial were (1) the nature of the contract and agreement between Davis and defendant Bush; (2) the propriety of the several charges made against the account of Davis, subsequent to his death, including supervising expenses which were charged against the Davis account. The defendant's theory, as disclosed by the evidence, is that, after Davis' death, the expenses of providing employes to supervise construction of the several projects previously contracted, are not properly a part of the cost of the contracts, but that the cost of the contracts, for purposes of accounting between the parties, should be arrived at without including cost of such supervisory employes; that is, the Davis half of the gross profits should be charged with the full amount of all supervisory expenses. On the other hand, plaintiff's theory is that, upon the death of Davis, any supervisory expense incurred is chargeable directly against the several construction projects, prior to any division or profits.

The foregoing is an outline of the chief issues tried in the rather long and involved controverted statement of facts; and we might add, at this juncture, that same is sufficient to demonstrate the errors in the admission and rejection of evidence, assigned for reversal of this cause. Other disclosures will appear more readily from the statements made in connection with appellant's several propositions.

The first point upon which appellant predicates his appeal is the admission, over objection, of a written report of plaintiff's auditor, which included transcript and summary of receipts and disbursements from defendant's books, declaration of his interpretation of the controverted contract, conclusions as to the legal effect of such contract, his deductions as to the proper allocation of expenditures, and adjustment of the account in conformity with his interpretation of the contract; all in line with

the contention of plaintiff; and further, over objection, allowing the report, with all the auditor's conclusions and deductions, to be sent into the jury room and retained by the jury during consideration of its verdict.

■ The evidence shows that the auditor was selected and engaged by plaintiff, or her attorney, to audit defendant's books; that he made his report, prefacing the transcript and summary of receipts and disbursements with the remark, addressed to plaintiff's attorney: "Pursuant to your directions to audit and report on the state of the G. W. Davis account on the books of the Texas Automatic Sprinkler Company of Dallas, hereinafter is our report on same * * *". The books of the Sprinkler Company were made available to such auditor, and, at the conclusion of the audit, copies of the report were furnished plaintiff and defendant. The report concludes with the statement, addressed to plaintiff's counsel: "Your auditor takes this occasion to express his appreciation of the courtesies received at the hands of the various employes of the Texas Automatic Sprinkler Company. He has viewed the situation, however, from the standpoint of Mrs. Davis and her interests and trusts that this report, its conclusions and recommendations, may aid her in arriving at a proper and equitable adjustment with the Company." The auditor's report assembles figures incident to the audit, showing gross receipts, expenses and profits on the contract between the parties, as interpreted by him, summarizing thusly: · Receipts $136,170.85; expenses $123,814.03; profits $12,356.82; and he then concludes his calculations, that plaintiff is entitled to $6,178.41, less $3,252.49, saying: "* * * and he (Davis) and his estate have drawn $3,252.49, leaving due his estate $2,925.92." The report shows the summary to be based upon an allocation of the gross profits on each job before applying the cost, which defendant contended should be deducted from Davis' part of the gross profits. With respect to these entries, the report continues: "Your auditor has eliminated these credits likewise by transferring them back to costs where they originally came from, which is necessary in order to show true costs." The report further says: "These are profits as at date shown on books and were transferred to credit of W. G. Davis' personal account * *, * your auditor believes these credits should be cancelled and

reserved"; continuing, "These are items (items in dispute) charged to Mr. W. G. Davis' personal account, which your auditor has charged to costs where, in his opinion, it properly belongs * * *." The report teemed with other like conclusions, deductions and opinions, and argument of the auditor, based upon hearsay, the inadmissibility of which is sufficiently illustrated by the above, requires the reversal of the case.

Furthermore, the court permitted the jury to take into the jury room and retain during its consideration, the auditor's report containing, as it did, the series of opinions, conclusions, deductions, arguments and hearsay statements on controverted issues. Clearly, the admission of the report was calculated to influence the jury and impress it with the importance of the document.

■ Where facts can only be ascertained by inspection of a large number of documents, detailed statements or summaries of conflicting accounts, rather than admit the books themselves in evidence, it is advisable to effect the same result by testimony, before the jury, of a qualified auditor as to his findings on examination of the books or documents. Such testimony, however, shall go no further than to relate what is reflected by the books or documents examined. The report in question not only shows the books and document entry of the amounts paid Davis and Bush, but also shows which should, and which should not, be charged to Davis, and thereupon entry was made charging such items back to the contract. This involves issues which the jury was impaneled to try. The auditor's testimony, as well as his report, if admissible in evidence, should have been restricted to the grouping of items shown on the books. Such would have enabled the jury to determine whether or not such items were properly accountable as gross expenses. The auditor's opinions, conclusions, and deductions were not admissible as evidence to aid the jury in determining the issues.

■ In view of another trial, without attempting to discuss the testimony in detail, we sustain appellant's further assignment of error on the action of the trial court in sustaining plaintiff's objection to defendant's proffered testimony of the witness, Tom E. Hay, Jr., to the effect that the terms and conditions of the contract between Davis and Bush, here in dispute

were, in his presence, negotiated and discussed by them, and, by Bush, dictated to said witness in the presence of Davis. The witness, we think, should have been permitted to relate the conversation had between the parties and refer to his transcribed shorthand notes in support of his testimony. Such evidence was in line with and germane to defendant's contention, and if offered on another trial, should be admitted.

We have carefully reviewed all other assignments presented; they are overruled, and, for the errors above discussed, judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.