**PETERS v. BROOKSHIRE.**

No. 14746.

Court of Civil Appeals of Texas. Fort Worth.

April 5, 1946.

Rehearing Denied June 7, 1946.

See, also, 143 Tex. 21, 182 S.W.2d 361.

Black, Graves & Stayton, of Austin, and William L. Evans, of Fort Worth, for appellant.

Rufus S. Garrett, of Fort Worth, for appellee.

BROWN, Justice.

J. J. Brookshire and S. N. Brookshire were brothers. S. N. Brookshire was married; his wife's name was Lydia, and there was born to this union one daughter, Mrs.

Seab B. Peters, whose husband is C. C. Peters.

Seab B. Peters, joined by her husband, by an amended petition, alleged that she and the defendant J. J. Brookshire were the joint and sole owners of certain described real estate and that each owned an undivided one-half interest therein; that the defendant has collected all of the rents and revenues derived from such property up and until March 11, 1939, at which time the receiver appointed by the trial court has collected such rents and revenues; that the defendant has never accounted to plaintiff for her one-half of such rents and revenues; and she prayed for an accounting and that the properties be partitioned.

It appears that S. N. Brookshire (now deceased) conveyed all his right, title and interest in the properties involved to his wife, Lydia, and that she died in the year 1937 and left a will in which she devised all of her property to the plaintiff, Seab B. Peters.

S. N. Brookshire has died since his late wife's will was probated, and it is undisputed that Mrs. Seab B. Peters is the owner of whatever interest S. N. Brookshire and his wife had in and to the properties in question.

Defendant J. J. Brookshire answered and filed a cross-action, in which he alleged that the "partnership" owed him a large sum of money representing the portion of the proceeds of the property paid to S. N. Brookshire, Lydia Brookshire and Mrs. Seab B. Peters which amounts so paid were in excess of the amounts paid to or received by J. J. Brookshire, and that there was also owing to him the sum of $4000 advanced by him to the "partnership", together with interest thereon; and that these indebtednesses should be paid to defendant and the balance of the estate divided equally.

Thus it is seen that J. J. Brookshire likewise prayed for an accounting.

The cause being tried to a jury only the following issues were submitted: (1) Do you find from the preponderance of the evidence submitted to you herein that on or about October 25, 1934, S. N. Brookshire made a bona fide transfer and conveyance of his undivided one-half interest in the property described in plaintiff's petition to his wife, Lydia Brookshire, as her sole and separate property and estate? The answer is "No." The second issue was conditionally submitted and not answered because of the negative answer to the first.

The plaintiff requested two special issues that were given: (1) Do you find from the preponderance of the evidence that J. J. Brookshire and S. N. Brookshire intended that they should own and hold the real estate conveyed to them in the deeds offered in evidence as individual grantees, each owning an undivided one-half interest in said property? The answer is "No"; (2) Do you find from the preponderance of the evidence that the notes introduced in evidence signed by S. N. Brookshire and J. J. Brookshire, and payable to J. J. Brookshire, were intended by them to be the obligation of said J. J. Brookshire and S. N. Brookshire as individuals? The answer is "No."

There are no objections to the charge, and on this verdict the trial court rendered judgment, in substance as follows: The judgment recites that the court finds from "the uncontradicted evidence" the existence of the "partnership"; the conveyance by S. N. Brookshire of the legal title to his one-half interest in the partnership property to his wife and the retention of the equitable and beneficial ownership in himself; the taking by Mrs. Peters of all her mother's estate through her mother's will; the conveyance and assignment by S. N. Brookshire of "full ownership of the partnership property" (including any and all claims for an accounting against J. J. Brookshire) to Mrs. Peters, at or about the time this suit was filed; that the business of said partnership as between S. N. Brookshire, Lydia Brookshire, Seab B. Peters and J. J. Brookshire has been continuously conducted up and until this suit was filed and a receiver was appointed to take charge of the said properties just as was done before S. N. Brookshire deeded the properties to his wife; that from the year 1922 to May, 1932, S. N. Brookshire received and disbursed the partnership funds and from said last-named date to the filing of this suit

J. J. Brookshire received and disbursed such funds; that from 1922 to May, 1932, S. N. Brookshire used $364.34 more of the partnership funds for his personal benefit than was paid to defendant J. J. Brookshire; that from May, 1932, to December, 1938, J. J. Brookshire collected for the partnership the sum of $32,548.43, and during such period paid out for the benefit of such partnership the sum of $15,844.65, and paid to S. N. Brookshire, Lydia Brookshire and Seab B. Peters a total of $11,471.18; and that after deducting the amount paid out for the partnership and the amount paid to the three beneficiaries above named, there remained a net balance of $5,232.60 of partnership funds in the hands of J. J. Brookshire to be accounted for; that from January 1, 1939, to March, 1939, when this suit was filed, J. J. Brookshire collected for the partnership account the sum of $795.25 and during such period paid out for the use and benefit of the partnership the sum of $266.75 and paid to S. N. Brookshire and Seab B. Peters the sum of $559.57, and therefore has paid out the sum of $31.07 more than he collected, during such period; that since the filing of this suit the receiver, under the trial court's orders, has paid to Seab B. Peters the sum of $675 out of the said funds, and that S. N. Brookshire, Lydia Brookshire and Seab B. Peters have received the total sum of $13,070.09, while defendant, J. J. Brookshire, has received the sum of $5,232.60 (less the deficit of $31.07) and therefore lacks $7,868.56 of receiving his share of the partnership funds; that prior to May, 1932, J. J. Brookshire advanced to the partnership the sum of $4,000 with the agreement that such sum would be repaid to him, with 8% interest, out of partnership funds, at some later date, such indebtedness being evidenced by a note and a renewal note and carried on the books as a debt owing by the partnership; that there is no evidence of any other indebtedness owing; that the receiver has cash on hand in the sum of $2,622.74.

The court finds that Seab B. Peters and J. J. Brookshire are the sole owners, "share and share alike," of the properties involved and are entitled to a partition and division of said properties, "but that it is not susceptible of an equitable partition at this time," and the judgment provides that the receivership be continued, that the receiver sell the said described properties, and that the monies so received, together with the monies on hand, be applied as follows: A. To the payment of costs, receiver's fees and expenses; B. To J. J. Brookshire $9,400 with 8% interest from the date of the judgment; C. To J. J. Brookshire $7,868.56, being the amount required to even up the account between the partners; and D. That the remainder of such funds be divided equally between Seab B. Peters and J. J. Brookshire.

Seab B. Peters appeals and presents nineteen points.

This cause was before this court heretofore and the opinion is found in 178 S.W. 2d 874; the Supreme Court granted a writ of error and reversed and remanded the cause on an issue that is not raised at this time. See Peters v. Brookshire, 143 Tex. 21, 182 S.W.2d 361.

We are of opinion that points 1, 2, 6, 7, 10 and 11 are so closely related that we may discuss them in such manner.

Point 1 asserts that the trial court erred in rendering judgment for appellee on his cross-action for an accounting because there is no evidence on which to base the judgment, and point 2 asserts such error because the evidence is insufficient.

Point 6 asserts that the judgment for appellee is erroneous because there is no evidence as to the state of accounts between the parties for and during the entire period involved, and particularly no evidence as to transactions during the periods from January 1, 1939, to about March 15, 1939, and from March 15, 1939, to the date of the trial; and point 7 asserts that the evidence is insufficient as to such dates and matters, during such periods.

The tenth point asserts that appellee is not entitled to a judgment on accounting because all of the testimony is based on the theory that a partnership existed between the parties at all times whereas the evidence establishes the fact that Seab B. Peters has had only a cotenant's interest in the properties since her mother's death, and that a proper accounting between cotenants cannot be based upon principles

185

applicable to an accounting between partners; and point 11 asserts error because of the theory of such partnership, when the undisputed evidence shows that the partnership was dissolved in 1934 when S. N. Brookshire conveyed his interest in the partnership property to his wife Lydia, and since J. J. Brookshire acquiesced in the conveyance and made no effort to subject the interest that passed to Lydia Brookshire to the debts of the partnership, Lydia Brookshire, under whom Seab P. Peters claims, took such interest free and clear of all partnership debts.

Great stress seems to be laid by appellant on the theory that from and after S. N. Brookshire deeded all of his interest in the partnership properties, such act had the legal effect of dissolving the partnership and Mrs. Brookshire then became only a cotenant with J. J. Brookshire, and that when Mrs. Peters took title, through her mother's will, she merely became likewise a cotenant with J. J. Brookshire; that neither of these married women could be members of a partnership, under the undisputed facts of this case, and that a wholly different rule for effecting an accounting must be employed in this case.

As we view the facts before us, we are of opinion that it makes no difference in this case whether the deed from S. N. Brookshire to his wife, Lydia, was at the time of its execution a bona fide transaction and all right, title and interest in the partnership properties owned by S. N. Brookshire passed to her unconditionally, or whether S. N. Brookshire's deed was not executed in good faith but was in fact a simulated conveyance.

It is clear from the record before us that the partnership properties have been handled and managed from the very beginning, up and until the suit was filed, in the same way, with S. N. Brookshire handling the funds and books of the concern until he relinquished such task to J. J. Brookshire, who in turn took charge of same.

There is nothing in the record to warrant our holding that anything has been done affecting the properties or the rights of the parties that would impose any character of burden upon either of these married women that a plea of coverture could relieve against. Here we are interested in balancing accounts between the owners and the interest of no third person is involved.

These facts do not disclose any so-called ordinary or usual partnership. All of the obligations incurred by these two brothers, S. N. Brookshire and J. J. Brookshire, were incurred when they were both in sound health and working together.

The indebtedness due by the partnership to J. J. Brookshire was incurred and a note given to evidence same long before S. N. Brookshire deeded his interest to his wife, and, before his death, S. N. Brookshire testified to the justness of the debt and expressed his desire to see the debt paid, if J. J. Brookshire did not owe the partnership enough to discharge the note and interest.

Here we find a situation where the owners of the property involved simply look to the receipts from same, the legitimate expenses incurred and an equal division of the profits, if any.

Call it a partnership or a cotenancy and the facts and results remain the same.

Assuredly, Mrs. Brookshire, who has "fallen asleep," could not be heard to say, were she present in the flesh, that she did not take such interest as the deed from her husband gave her burdened with such obligations as existed at the time of the execution of the deed, and, if she, as the record discloses, continued as one of the "partners" in the ownership and management of the properties up and until her death, without complaint on her part, we are at a loss to understand how the dissolution of the partnership between S. N. and J. J. Brookshire through the execution of a deed from S. N. Brookshire to his wife, if such act as a matter of law did dissolve the partnership, could in anywise affect the rights and responsibilities that arose when Mrs. Brookshire continued to deal with J. J. Brookshire and the properties, up and until her death, in a manner identical with that had and done by her husband.

We do not understand that the acts and contracts of a married woman, such as those shown before us, are void, but that

they may be, under proper circumstances, voidable.

Mrs. Lydia Brookshire has made no complaint, and we see no reason why her daughter, the devisee of the estate involved, may complain at this time.

We are supported in our conclusions as to the nature of the transactions before us and the character of the enterprise engaged in by the holdings by this court in the case of Crutcher v. Sligar, 224 S.W. 227, in which a writ of error was refused. We choose to follow this case and its sound pronouncements.

Thus it is seen that it is immaterial as to the finding made by the jury in answer to the above-quoted first special issue.

If the deed is good, the question of coverture has no bearing on this case, and if it was a simulated transaction, the husband continued as a "partner"; and the authority is conclusive as to any complaint Mrs. Peters may have on account of her coverture.

Points 10 and 11 are overruled.

As to points 1, 2, 6 and 7, we are of opinion that the objection goes merely to the weight to be given the testimony touching the status of the accounts between the parties.

The books and records cover a period of time from the year 1922 to early in 1939.

S. N. Brookshire, after Mrs. Peters brought this suit, testified by deposition (he died in 1940) and at no time nor place did he question his brother's honesty or the book entries made by his brother. The small amount testified to by the auditor as reflecting what S. N. Brookshire owed the partnership when he turned the business and bookkeeping over to his brother certainly discloses no effort to impose any substantial indebtedness upon the shoulders of S. N. Brookshire, and S. N. Brookshire made no effort to show that he did not owe such small sum.

From that time on and until this suit was filed the business was handled by J. J. Brookshire, and S. N. Brookshire and Mrs. Peters made no effort to show that S. N. Brookshire, Lydia Brookshire and Mrs. Peters did not get the sums charged to them and testified to by the auditor.

The auditor had lost his "worksheets," but had the "summary" before him, when he testified, and we are convinced that his testimony was admissible. No one testified to different facts and figures, and the trial court believed his testimony.

The books and records were before the court as was the defendant and witness, J. J. Brookshire, and the plaintiff, with access to all books and records and the right of cross-examination of the auditor and of J. J. Brookshire, is in no position to complain of the admissibility of the testimony and evidence tendered.

The cases of Clopton v. Flowers, Tex. Civ.App., 183 S.W. 68 (a case cited with approval many times); Hartford Acc. & Ind. Co. v. Shaw, Banking Com'r, Tex.Civ. App., 8 S.W.2d 196, writ dismissed; Byrd v. Taylor, Tex.Civ.App., 40 S.W.2d 942; and Corbett v. Raymondville Ind. School Dist., Tex.Civ.App., 56 S.W.2d 325, writ dismissed, support our views as to the admissibility of the auditor's testimony and "conclusions."

We hold that there is some evidence of probative value covering the state of the accounts between the parties as relates to all of the periods of time mentioned in points 6 and 7. The trial court believed the testimony and evidence, and neither party to the suit requested any issues on the accounting phase of the case, nor did they object to the court's charge because no such issues were submitted. By common consent they left the issues to the trial court.

What we have said disposes of points 3 and 4, bottomed on the admissibility of the auditor's testimony.

The fifth point complains of the failure of the trial court to appoint a "master" or auditor to determine the state of accounts between the parties.

The fact that the books may not appear to be complicated, and the further fact that private auditors did make audits of the books, may have moved the trial court not to appoint a court auditor.

We do not see that any reversible error has been committed by the failure to appoint an auditor, although, in view of the complaints made, a court auditor may

have been of assistance to the court, as may have been an auditor employed by appellant.

Furthermore, no successful attempt has been made on the integrity of the audit actually made.

The eighth point complaining of the finding by the trial court of certain items of the account between the dates January 1, 1939, and March, 1939, when the suit was filed, as not supported by any evidence, is overruled. There is evidence of probative force to support the finding.

■ The ninth point complaining of the finding by the court of a certain sum of money paid to Mrs. Peters, since the filing of the suit and upon order of the court, as being without support in the evidence, is not well taken for the reason that the trial court may take judicial notice of all orders made in the case before him.

Furthermore, the finding is not material to any issue as to an accounting between the parties, although it will necessarily be taken into consideration in dividing the estate between the parties, after the sale of the properties.

■ The twelfth point complains of the finding by the trial court that the business of this "partnership" as between all of the interested parties was continuously conducted as in the beginning and just as if the legal title of S. N. Brookshire had never been transferred.

The undisputed testimony and record establishes this fact conclusively.

■ There is no merit in the thirteenth or the fourteenth points wherein it is asserted that the trial court erred in permitting J. J. Brookshire to testify that S. N. Brookshire told him that he was transferring his property to his wife to prevent his creditors from reaching it, and error of the trial court in permitting one Hicks to testify that S. N. Brookshire, after he made the deed to his wife, told the witness that he made the deed for said such purpose.

As we view the case, it makes no difference, as between the parties hereto, whether the deed constituted a bona fide conveyance or was done to thwart the efforts of his creditors to subject the properties to the payment of their claims.

No creditors' rights are involved in the suit before us.

The sixteenth point complains of the trial court's rendition of judgment for J. J. Brookshire on the $4,000 note and its renewal and extension.

The contention made is identical with that raised in the presentation of the tenth and eleventh points, and since we have concluded that there is no merit in these points we overrule the sixteenth.

■ The nineteenth point contends that it was error for the trial court to hold that the properties are not susceptible of an equitable partition.

In view of the state of the record before us, the character of the properties and the balancing of accounts, we see no error in the action of the court.

The fifteenth point asserts error in the failure of the trial court to sustain appellant's motion for a new trial because one of the jurors was so biased and prejudiced against C. C. Peters, husband of appellant, that she was deprived of her constitutional right to a trial by a fair and impartial jury.

■ Admitting, for the sake of argument, that this juror Baird admitted such animus against C. C. Peters as that he could not be a fair and impartial juror, nevertheless, the error, if it be admitted error, is immaterial because the answer made to Issue No. 1 is wholly immaterial as to the liabilities of the parties; the answer to Issue No. 1 requested by plaintiff is predicated on the undisputed evidence; no other answer could have been made that would be permitted to stand. The case was tried by all parties on the theory that the property was purchased by these brothers with the intention of using them in the character of partnership that was actually engaged in; and the answer made to plaintiff's requested issue No. 2 stands in a similar light. The uncontradicted testimony discloses that the note was given as a partnership note to evidence money loaned by J. J. Brookshire to the partnership undertaking. No other answer than the one made could have been permitted to stand under the undisputed facts.

■ As to the seventeenth point contending that the trial court erred in orally

188

instructing the jury to disregard the argument of appellant's counsel that the evidence showed a conspiracy against appellant, it seems to us that there is no evidence in the record warranting the conclusion that such a conspiracy existed. But, in view of the record, we can see no reversible error as to this proceeding.

As to the eighteenth point, complaining of the error in permitting the introduction of an abandoned and *unfiled* pleading that was prepared by appellant's former counsel but never employed at any stage of the trial, we see no error warranting a reversal for the reason that this abandoned pleading alleged that the deed from S. N. Brookshire to his wife, Lydia, was made "for convenience only and for the purpose of putting the legal title of said property in the said Lydia Brookshire but the equitable and beneficial ownership remained in S. N. Brookshire."

If our conclusions are correct, and we so believe, it makes no difference, so far as the relationship of the parties hereto are concerned and so far as the rights and responsibilities are to be determined, whether the conveyance was bona fide or merely simulated.

Finding no reversible error, the judgment is affirmed.