**PARKVIEW GENERAL HOSPITAL, INC., et al., Appellants,**

v.

**A. J. ASHMORE, et al., Appellees.**

**No. 534.**

Court of Civil Appeals of Texas, Corpus Christi.

Dec. 30, 1970.

Rehearings Denied Jan. 28, 1971.

Stone, Luther & Dyer, Hubert L. Stone, Jr., and Ronald D. Karchmer, Corpus Christi, for appellants.

William H. Bloch, Rockport, for appellees.

## OPINION

GREEN, Chief Justice.

This suit grows out of a contract dated March 5, 1968, but effective as of midnight February 29, 1968, whereby appellees purchased from appellants the hospital facilities together with all assets of Parkview General Hospital, Inc. in Corpus Christi, Texas. A promissory note in the principal sum of $324,000.00 executed by appellees to appellant Parkview General Hospital, Inc. secured by a second lien on the property sold, constituted partial payment for the transaction. The note provided that: "The obligation evidenced hereby is subject to off-sets and credits pursuant to contract dated March 5, 1968 by and between payee and makers upon contingencies

set forth therein." Based upon the alleged failure of appellees to make monthly interest payments as provided in the note, appellants notified appellees that they had accelerated the maturity date of said note, and claimed interest and attorney's fees as provided therein. When payment was not made on the face amount plus interest and attorney's fees, notices of foreclosure sale under deeds of trust were posted.

Appellees thereupon filed this suit against appellants to enjoin foreclosure of collateral securing payment of the note, alleging no default had occurred. They requested the trial court to determine the proper amount of offsets and credits to the note, and to determine the total principal and interest payable in full satisfaction of the note. Appellees tendered into the court the sum of $255,000.00 and made a continuing offer of tender of any additional sums that the trial court might determine to be due and payable on said note in order to extinguish their liability thereon.

Issues were joined on these matters by the pleadings of the parties. Upon trial before the court without a jury, the court determined that certain offsets and credits were allowable against the principal sum of the note, and that certain other claimed credits were not, and fixed the amount of principal and interest due. The court granted temporary injunction against foreclosure proceedings upon the condition that said injunction become permanent provided appellees paid within five days of pronouncement of the court's bench order the difference between the amount determined to be due by the court and the $255,000.00 theretofore tendered by appellees. Appellees paid into court the full amount of the judgment within the five days period, and the injunction became permanent, and the liens securing the note were released. The trial court found that there had been no default in payment of any installment on

the note by appellees, and that the sum demanded by appellants, holders of said note, in satisfaction of the note was excessive, and ruled that appellants were not entitled to recover attorney's fees.

The contract between these parties whereby appellants sold and appellees purchased the hospital facilities together with all assets of Parkview General Hospital, Inc., evidences the consideration for such transaction, as follows:—$75,000.00 cash; assumption of accounts payable of appellants amounting to $121,260.39; assumption of notes payable to banks by appellants, the schedule in evidence showing the indebtedness to banks assumed by appellees from appellants at $77,890.54; the $324,000.00 second lien mortgage note executed by appellees; and the payment of a monthly stipend to one of the parties. This action involves only the second lien note and the contract in so far as the contract applies to said note.

Appellants' appeal is based on their contentions (1) that acceleration of the maturity was lawful, and that they were entitled to judgment for attorney's fees; (2) that the trial court erred in allowing certain offsets and credits to the note; and (3) that the trial court erred in failing and refusing to make findings of fact and conclusions of law as requested.

Appellees deny the contentions of appellants, and cross-appeal on the ground that the court erred in refusing an additional credit of $35,000.00.

There were no written findings of fact and conclusions of law filed by the trial court.[1] In such case, the trial court's judgment implies that all necessary fact findings were made by that court in support of the judgment, and the judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence. Seaman v. Seaman, Tex., 425 S.W. 2d 339; Construction and General Labor

1. The request of appellants for certain findings and conclusions and the trial court's failure to grant such request are considered infra under appellants' points Nos. 17 and 18.

Union Local No. 688 v. Stephenson, 148 Tex. 434, 225 S.W.2d 958. In seeking to determine whether the judgment finds support in the evidence, it is proper to consider only the most favorable evidence to the issue, and to disregard entirely that which is opposed or contradictory in its nature. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609. In determining whether the findings are contrary to the great weight and preponderance of the evidence (factually insufficient) we give consideration to all of the evidence. Garza v. Alviar, Tex., 395 S.W.2d 821.

## BLUE CROSS–BLUE SHIELD MEDICARE OFFSET

Appellants' first four points allege error in the trial court's allowance of an offset against the note of the sum of $9,788.00, representing an advance which had been made to appellant Parkview General Hospital, Inc. before the sale by Blue Cross-Blue Shield of Texas. Appellants contend that there was no duty upon appellants to reimburse appellees for such sum, which according to appellants was a working capital advance to appellant hospital; and that there was no evidence and factually insufficient evidence to support the ruling of the trial court that same was a proper offset to appellees' liability on the note.

■ There was evidence from qualified witnesses from which the trial court could reasonably find the following: On November 10, 1967, the sum of $9,788.00 was received by appellant Parkview General Hospital, Inc. from Blue Cross-Blue Shield of Texas acting as the fiscal intermediary in Texas of the Department of Health, Education and Welfare (H.E.W.) of the United States Government. This money was so received as a working capital advance *for care of medical patients,* and was deposited to the account of the hospital. The item was treated on accounting records as a liability of the appellant corporate hospital. Appellees' attorney, who is also one of appellees, was not aware of

this item at the time he wrote the contract, nor at the time it was executed. Several months after the closing of the contract, Blue Cross-Blue Shield made demand upon appellees for repayment of or assumption of the $9,788.00 item, and threatened to terminate the successor hospital, P. & S. General, as a medicare provided unless this was done. After negotiations with Blue Cross-Blue Shield, appellees did assume the liability, and made demands upon appellants to pay the same. When appellants refused, appellees sought to deduct this amount from the note pursuant to certain provisions of the contract relating to the right of offset, and thereafter paid interest on the thusly reduced principal balance.

The contract provided:

## SELLER'S INDEMNITIES AND WARRANTIES TO BUYERS

"Corporate Seller, joined by Edwin E. Connor and Vida Lee Connor individually, covenant. and agree to hold Buyers, and P and S, Inc., free and harmless from any and all liabilities of any kind or character whatsoever except mortgage indebtedness secured by realty and assumed by Buyers and those liabilities set forth in Exhibits A and B hereto. * * *"

The Blue Cross-Blue Shield liability was not listed on Exhibit A or B, and was not a mortgaged indebtedness.

The same paragraph of the contract contains the following provision:

" * * * Should Seller ever become liable for refund or repayment of any sums paid by any person, any entity, or agency of any Government, for hospital or medical services rendered or to be rendered by Parkview General Hospital, Inc., Seller agrees to promptly pay and discharge any such liability or to defend such claim if Seller deems such demand without merit or an unliquidated claim, and should Buyers or their lessee P and S, Inc., ever become liable for repayment

or refund thereof, any such amount paid or refunded shall be a direct credit to the unpaid principal balance of said $324,000.00 note executed and delivered by Buyers to Seller pursuant hereto."

The word "Seller", the second word at the beginning of this quote, a part of which word was scratched out and an indiscernible word written above it, obviously was written in error, and was intended to refer to buyers, as is clearly shown by the remainder of the quote. The testimony shows this to be the case. The $9,788.00 was advanced by an agency of the United States for hospital services to be rendered by Parkview General Hospital, Inc. The appellants by their contract agreed to promptly pay and discharge any such liability or to defend such claim. They did neither. Appellees became liable for same, and set the same up as a liability of appellees' successor hospital, P and S General Hospital, Inc. Blue Cross-Blue Shield can demand repayment thereof from appellees at any time, and, according to the evidence of appellees' attorney, they will have to pay it.

In view of these provisions of the contract, and of the evidence concerning the advance by the Blue Cross-Blue Shield of this sum to the appellants, and the subsequent liability of appellees therefor, we hold that the ruling of the trial court that this amount was a proper offset to appellees' liability on the note found support in the evidence, and was not against the greater weight and preponderance of the evidence. We overrule appellants' first four points of error.

## CREDIT FOR EXCESS IN ACCOUNTS PAYABLE

Appellants' points Nos. 5 to 10 inclusive deal with alleged error of the court in allowing a credit on the note of $16,492.68, the difference between the $131,260.39 of accounts payable liabilities of sellers assumed by purchasers, and the $147,753.07 amount of actual accounts payable liabil-

ities of appellant seller as of March 1, 1968. Appellants contend that there was no duty on them to reimburse appellees for such excess liabilities; that appellees were estopped by their misrepresentation to appellants of the amounts of accounts payable at the time of the sale; that appellees had waived their right to this sum by said misrepresentations; that there was no evidence and factually insufficient evidence to support the rulings of the court as to such offset. Appellants' points 11 to 14 inclusive concern their claims of inadmissibility of the testimony of the witness Jackson as to this $16,492.68 offset, alleging that Jackson had no knowledge of the amount of any individual or group of the accounts payable at the date of the contract, the date of trial, or any other date; and that the testimony of Jackson as to the total lump sum of the accounts payable of Parkview at the time of the contract date was not based upon personal knowledge and information of the witness as to any of the specific accounts payable claimed by appellees.

Prior to March, 1968, the effective date of the contract in question, the hospital was operated as Parkview General Hospital, Inc., hereafter referred to as Parkview. After its purchase by appellees, the name was changed to Physicians and Surgeons Hospital of Corpus Christi, Inc., herein called P and S. The contract together with accompanying letter dated March 1, 1968, which became a part thereof, provided that the invoiced accounts payable liabilities of Parkview as of February 29, 1968, amounted to $121,260.39, and that this total subject to increase of non-invoiced accounts payable invoiced thereafter and on or prior to March 6, 1968 as provided in the letter of March 1, 1968, was the only accounts payable liabilities of Parkview to be assumed by P and S. It was further agreed "Parkview General Hospital, Inc. shall be held free and harmless of liability only as to those accounts payable aggregating the sum aforesaid subject to increase as above set forth to the extent of non-invoiced accounts

payable of Parkview General Hospital, Inc., for goods and services theretofore received at February 29, 1968." During the trial it was stipulated that a mathematical error of $10,000.00 had been made in the calculation of accounts payable liabilities on February 29, 1968, and that the actual amount of such invoiced accounts as of that date assumed by purchasers was $131,260.39.

The trial court found in his judgment, that the true amount of accounts payable liabilities of Parkview on February 29, 1968, was $147,753.07, which sum appellees paid or became liable for, and that appellees were entitled to a credit on the note for $16,492.68, the difference between such sum and the accounts payable assumed by appellees under the contract.

▆▆▆▆ The chief evidence on this issue of the excess of accounts payable over and above that assumed by appellees was furnished by the witness Ed Jackson. He was a certified public accountant, and a partner in the accounting firm of Peat, Marwick & Mitchell. This accounting firm had handled the accounts of P & S Hospital since its inception on March 1, 1968, as the successor to Parkview. This work was done by junior accountants under his supervision, and he supervised the P and S accounts for his firm. He had sought to prepare the total cost to appellees of liquidating creditor liabilities assumed by appellees from appellants in 1968, but could not do so because of the condition of the books of account, which evidence showed to be a "sticky messy set of books", and because all of the necessary figures to do so were not then available and because on March 1, 1968, there was no way to know the correct amount of accounts payable. In June, 1969, appellees instructed Jackson and his assistants to prepare a total and complete analysis of the liabilities assumed by them under the contract, and to determine the excess paid by appellees on appellants' liabilities, and the accountants, working under Jackson's supervision, from the books and accounts determined the excess to be $26,492.68, later reduced to $16,492.68 by stipulation due to an admitted mistake. The schedule prepared by these auditors, unaudited, from the books, files, and supporting documents, and introduced into evidence, was according to Jackson's testimony, an analysis of the computation of the total aggregate sum paid by appellees to satisfy appellants' trade creditors, which amounted to $147,753.07. While the letter supplement to the contract provided that "All non-invoiced accounts payable liabilities of Parkview General Hospital, Inc. invoiced subsequent to date hereof (March 1, 1968) and on or prior to March 6, 1968 will increase the stated sum by the aggregate amount of said non-invoiced accounts payable liabilities", there was no evidence of any such non-invoiced accounts which were invoiced between March 1 and March 6.

As shown by Jackson's testimony, he personally was not acquainted with the details of the contents of the accounts payable files and supporting documents; the actual analysis was done by accountants working under his supervision, but such files and supporting documents were in his possession prior to the trial, and same were presented in court during the trial.

As stated above, Jackson was a certified public accountant, and qualified as an expert witness. His testimony as to the manner he reached the amounts of the excess due to appellees was based on his analysis of the work of accountants working under his supervision. Under the circumstances, it was not necessary that he personally inspected the files, books of account, or other documents supporting the work of his assistants. Such documents were in court, subject to appellees' investigations. We feel that his testimony comes within the rule followed in Spradlin v. Rosebud Feed & Grain Co., Tex.Civ.App., 294 S.W.2d 301, wr. ref. n. r. e., as follows (p. 304):

"Appellants objected to the verbal testimony of the witness Zipperlen relating

to the results of the tape recording made by him from the sales tickets and books of account, because such testimony was incompetent and inadmissible, in that it constituted a mere conclusion on the part of the witness. We think the testimony, under the circumstances shown by the record, was competent and admissible, and that the trial court did not err in overruling the objection interposed. As said in 17 Tex.Jur., Sec. 202, p. 509: 'Where books of account or accounts are voluminous, involving intricate details, and it is inconvenient to make the necessary examination, an expert accountant or other competent person who has examined them may be permitted to state his conclusions as to what they show, or tabulated statements made up from books in evidence may be admitted where they are shown to be correct, and contain all that which books would show in regard to the matter involved.' See also Cochran v. Hamblen, Tex.Civ.App., 215 S.W. 374; Missouri, K. & T. R. Co. v. Patterson, Tex.Civ.App., 164 S.W. 442; Bush v. Davis, Tex.Civ.App., 147 S.W.2d 888; Blair v. Board of Trustees, Tex.Civ.App., 161 S.W.2d 1030; Ellison v. Ellison, Tex.Civ.App., 164 S.W.2d 775; Shelby County v. O'Banion, Tex. Civ.App., 188 S.W.2d 195; Peters v. Brookshire, Tex.Civ.App., 195 S.W.2d 181."

Also see Morgan v. Arnold, Tex.Civ.App., 441 S.W.2d 897, wr. ref. n. r. e.; Martin v. State, Tex.Cr.App., 395 S.W.2d 631, 634.

The questions of estoppel and waiver, raised by appellants in the trial court and on appeal, became fact issues which were decided by the trial court contrary to appellants' contentions. We find no error in that respect.

Appellants' points of error Nos. 5 to 14 inclusive are overruled.

### ACCELERATION OF NOTE— ATTORNEYS' FEES

Appellants' 15th and 16th points read:

*"Fifteenth Point of Error*

The Trial Court erred in holding that Parkview General Hospital, Inc., did not properly accelerate the maturity of the $324,000.00 note of Appellees for the reason that the record shows Appellants complied with all of the required steps in order to accelerate the maturity of said note under the terms thereof.

*Sixteenth Point of Error*

The Trial Court erred in holding that Appellants were not entitled to recover attorneys' fees as set forth in the note for the reasons that there was proper acceleration of the maturity of such note, that proper demand for such attorneys' fees was made upon Appellees, and that the evidence concerning the reasonableness of the amount of the attorneys' fees so sought by Appellants is completely uncontroverted by Appellees."

Appellees replied by their 1st counterpoint as follows:

"The Trial Court correctly held that there was no default in payment by Appellees to Appellants; that attempt of Appellants to accelerate and mature the note was unlawful and erroneous; that placement of note in hands of attorneys for collection, and efforts to collect attorneys' fees thereon, was improper because no default had occurred and therefore no attorneys' fees were payable and no acceleration and maturity of the note could be had by Appellants."

The $324,000.00 note drew interest at 6% per annum from date, payable at Parkdale State Bank in Corpus Christi, Nueces County, Texas, which was to be paid as follows:

"Accrued interest on principal sum shall be payable monthly on or before the last day of each month, the first interest payment due and payable on or before March 31, 1968 and like payments of interest being due and payable on the last

day of each month for thirty-five (35) consecutive months thereafter; and commencing March 31, 1971 and for eighty-four (84) consecutive months thereafter, each installment payable on or before the last day of each month, there shall be paid Five Hundred Dollars ($500.00) each month on principal plus accrued interest on unpaid principal balance. All unpaid principal balance and accrued interest thereon shall be payable in full on or before ten (10) years from date hereof. Prepayment may be made at anytime of all or any part of this obligation without penalty."

The provisions of the note for acceleration of maturity in case of default, and for attorneys' fees and waiver of present read:

"Default in the payment of any part of the principal or interest, when due, or failure to comply with any of the agreements and conditions in the instrument given to secure this note shall, at the option of the holder hereof, mature the whole of this note ten days after receipt of written notice by makers from payee posted by certified or registered mail to makers.

In the event this note is placed into the hands of an attorney for collection, or if collected through Probate or Bankruptcy proceedings, then an additional 10% on the amount of principal and interest then owing hereon, shall be added to the same as attorney's fees. The obligation evidenced hereby is subject to off-sets and credits pursuant to contract dated March 5, 1968 by and between payee and makers upon contingencies set forth therein.

The makers and all endorsers, sureties and guarantors of this note hereby severally waive presentment for payment, notice of non-payment, protest and diligence in bringing suit, against any party hereto, and consent that the time of payment of this note, or any part thereof, may be extended without notice."

The trial court in its judgment made findings and adjudication on appellants' request for attorneys' fees as follows:

"It is further the finding of this Court that there was no default in payment of any interest installment by Plaintiffs to Defendant Parkview General Hospital, Inc.; and that the acceleration and maturity of the note by said Defendant was therefore unlawful; and that the sum demanded by the Defendant to be paid by Plaintiffs in satisfaction of said note was excessive; it is therefore the further adjudication of this Court, and it is so ORDERED, ADJUDGED, AND DECREED that Defendant, Parkview General Hospital, Inc., and its attorneys of record in this cause shall not be entitled to recover any attorney's fees from Plaintiffs as sought for and claimed by Defendants in Defendants' Answer to Plaintiffs' Petition."

The first interest installment payment was made March 31, 1968. All interest installments were paid to Parkview General Hospital, and mailed to its post office box at the direction of appellant Mrs. Connor. The interest checks, payable on the last day of the month, were, in a number of instances, drawn on or about the last day of the month and mailed so as to reach appellants from one to five days after the due date, but all of such checks prior to the July, 1969 payment were accepted by appellants and deposited. As to the last eight months appellant, claiming the right to offset, reduced the amount somewhat, and appellants, though protesting in their endorsements of said checks, accepted and deposited same.

On August 6, 1969, appellees mailed their check to cover the July interest payment by regular mail to the same address as theretofore they had done by instruction of appellants. On the same day, appellants through their attorney, mailed to appellees a letter giving appellees notice of acceleration of the note, and on August 9, 1969, appellants wrote appellees returning the

check on the grounds that it was late and the payment was too small and did not constitute the correct monthly payment. On August 18th, twelve days after mailing their notice of acceleration, appellants gave written notice to appellees that notice of sale would be posted because of appellees' default. On that day, appellees deposited the August 6th check in appellants' bank account. On August 21st, appellants delivered their check in the amount deposited by appellees to appellants. This suit was thereupon filed by appellees.

The trial court's express finding that there had been no default in the payment of any interest installment included the implied findings that the amount of the check of August 6th was a proper amount of interest owing, and that the fact that that check was mailed one week late, in view of the prior dealings of the parties, was not sufficient cause for acceleration under the terms of the note. Appellants' points of error constitute "no evidence" points as to these findings. We hold that there was evidence to support such findings.

■ Where an obligee accepts remittances by mail for an extended period of time without protest, the established custom or course of dealing between the parties authorizes payment by mail, and payment is made when a letter containing the remittance is deposited in the mail. Fant v. Miller, Tex.Civ.App., 218 S.W.2d 901, wr. ref. n. r. e. Where demand for payment is made by mail, the time of presentment or demand is determined by the time of receipt of the mail. Tex. Business and Commerce Code § 3.504. The acceleration clause of the note provided that notice of default would not be effective until "after receipt" of ten days written notice of default. Appellees did not receive notice of any alleged default until August 7, 1969, one day after the payment complained of which under the evidence the trial court found to be adequate, had been tendered by mail. We find that the trial court's express and implied findings contained in the judgment, were supported by evidence, and

that the tender of the July interest was adequate, and made in accordance with the course of dealing between the maker and the payee, and that a completed tender was made before any acceleration of maturity could legally have been effected by appellants. Parker v. Mazur, Tex.Civ.App., 13 S.W.2d 174, wr. dism. The fact that the note contained a waiver of presentment clause is of no consequence as to appellees' right to notice, since this note provided for ten days notice of any intention to mature same. The case of Whalen v. Etheridge, Tex.Civ.App., 428 S.W.2d 824, wr. ref. n. r. e., is distinguishable in that there were nineteen unpaid installments due at the time of acceleration of maturity, and the note provided that in the event of default, the holder could mature the note "without notice".

Concerning the attitude of Texas courts concerning quick acceleration of long time notes, we quote from Bischoff v. Rearick, Tex.Civ.App., 232 S.W.2d 174, wr. ref. n. r. e., as follows:

"Under the record made we think the trial court was not in error in holding plaintiffs had no right to declare the debt due and to proceed to suit. A remedy given by contract to accelerate the maturity of a debt is harsh in nature. Crumley v. Ramsey, Tex.Civ.App., 93 S.W.2d 191.

The exercise of the remedy works a forfeiture of the right to pay over a period of time. In the instant case of some eight years. The provision for acceleration of the time of payment is a privilege running in favor of the holder and in many instances a valuable privilege. It is optional with the holder whether he will exercise it or not. The accelerated clause provides against the suffering of obvious hardships by a holder of a note or lien. Without the privilege a holder might be required to bring a series of suits, or wait an unreasonable time to collect his debt in cases, for example, where a vendee abandoned prem-

ises and defaulted in installments of principal and interest, or one or the other. It might also serve, and in many instances does, to protect the debt or lien in case of wilful or avoidable default. On the other hand, it may be used unjustly and oppressively. We think such is the case here.

It seems now to be the established law and approved by the Supreme Court that before the accelerated provision may be resorted to and the whole debt matured demand must first be made for any installment due on the debt and an opportunity given to pay the installment before the acceleration of the entire debt for failure to pay such installment. Brown v. Hewitt, et al., Tex.Civ.App., 143 S.W.2d 223, (e. r.) at page 227 on Motion for Rehearing, and the cases there cited."

See, also, Crumley v. Ramsey, Tex.Civ. App., 93 S.W.2d 191, wr. ref., where Judge Alexander, later Chief Justice of the Supreme Court, said: (p. 192–193)

"In our opinion, there was no such default in the payment of the monthly installments provided for in the note as to mature the entire indebtedness under the above-quoted automatic acceleration clause. In the beginning, it should be noted that a contract to thus accelerate the maturity of a debt gives a remedy that is harsh in its nature, and provision therefor, in order to be effective, should be clear and unequivocal; and, if there is a reasonable doubt as to the meaning of the terms employed, preference should be given to that construction which will avoid the forfeiture and prevent acceleration of the maturity of the debt. 6 Tex.Jur. 686, § 80; City Nat. Bank v. Pope (Tex.Civ.App.) 260 S.W. 903; Parker v. Mazur (Tex.Civ.App.) 13 S.W.(2d) 174; 19 Tex.Jur. 799, § 4. * * *"

Since there was no default, and no just cause for acceleration of the note the trial court properly denied recovery of at-

torneys' fees. Appellants' 15th and 16th points of error are overruled.

## FAILURE TO FILE FINDINGS OF FACT AND CONCLUSIONS OF LAW

Appellants in their 17th and 18th points contend that the trial court erred in failing and refusing to file findings of fact and conclusions of law, although, appellants say, such findings and conclusions were duly and timely requested by them. Appellees reply that no timely or proper request was made upon the trial judge to file such findings and conclusions.

Rule 296, T.R.C.P., provides that upon a trial by the court, "the judge shall, at the request of either party, which request shall be filed within ten days from rendition of final judgment or order overruling motion for new trial, state in writing the conclusions of fact found by him separately from the conclusions of law. * * *"

The record contains no request of appellants asking the trial judge to state in writing the conclusions of fact *found by him*. Appellants did file with the district clerk an instrument containing eleven pages of requested findings and conclusions, and requested the clerk only that such document be included in the transcript. No request was made in such document or the letter accompanying it that same be shown to the judge, or that the judge state in writing the conclusions of fact *found by him*. In our opinion, this did not constitute the type of request called for in Rule 296.

Furthermore, appellants took no exception to the refusal of the court to prepare findings and conclusions, nor is the failure or refusal of the trial court in this respect presented on appeal by way of bill of exception. We quote from Spradlin v. Rosebud Feed & Grain Co., Tex.Civ.App., 294 S.W.2d 301, 302, wr. ref. n. r. e. at p. 302:

"* * * Although the transcript contains a written request on behalf of ap-

pellants for the trial court to file findings of fact and conclusions of law, there is no showing by bill of exception or by any recital of the trial court in any judgment or order that this ex parte request was actually presented to the trial court or called to his attention. The applicable rule under the circumstances is thus stated in 3–A, Tex.Jur., Sec. 507, p. 654:

'The failure or refusal of the court to file findings of law and fact in response to a proper request therefor, or to file them within the time prescribed, will not be reviewed when it is not made the subject of a bill of exceptions, at least in the absence of a showing in the record that appellant or his counsel was misled by the court, and thereby prevented from presenting a bill in reference to the matter until after the expiration of the time therefor. * * *'"

Appellants' 17th and 18th points are overruled.

## THE CLAIMED $35,000.00 OFFSET

Appellees, as cross-appellants, filed their first and only point of error, as follows:

"The Trial Judge erred in not allowing a $35,000.00 off-set to the note which sum was paid by Appellees to cure failure of Appellants' warranties to Appellees that Appellees would acquire the properties free of any and all liens and encumbrances other than specific liens assumed by Appellees in their purchase from Appellants and in order to buy the peaceful possession and use of hospital premises which Appellants had warranted to Appellees."

Prior to and at the time of the sale of the hospital facilities by appellants to appellees, the "Hartgraves" suit was pending wherein plaintiff was suing these appellants-cross-appellees Parkview, et al, claiming an interest in the property. Appellees-cross-appellants knew of the pendency of such suit and of the claim of

Hartgraves, and the contract of sale dated March 1, 1968 between cross-appellants as buyers and cross-appellees as sellers contained the following provision:

"* * * Seller represents to Buyers that certain litigation exists wherein Corporate Seller and Edwin E. Connor and Vida Lee Connor are Defendants, and Seller covenants and agrees with Buyers that it will promptly discharge and pay any and all final judgments, if any, obtained by Plaintiffs in any cause of action heretofore or hereafter brought against all or any of said Defendants; and should any such judgment or judgments become a lien on any properties acquired by Buyers from Seller hereunder, Buyers shall be entitled to pay and satisfy and discharge such judgment lien, together with all interest thereon, and the amount paid thereon by Buyers shall be a direct credit to principal of the $324,-000.00 note to be executed and delivered to Seller by Buyers pursuant to provisions hereof. Seller agrees to maintain a diligent defense to all such actions and lawsuits heretofore or hereafter filed against Parkview General Hospital, Inc. and/or Edwin E. Connor and/or Vida Lee Connor, and should Seller fail or refuse to do so, then Buyers, in the sole judgment of Buyers, may intervene in or otherwise make defense to any such litigation and all of the reasonable costs and expenses thereof, including reasonable attorneys' fees, borne by Buyers and/or P and S, Inc. shall likewise be a direct credit to principal of said $324,000.00 note to be executed and delivered by Buyers to Seller. Seller further covenants and agrees that Buyers, and its lessee P and S, Inc., are warranted to use and peaceful possession of the premises to be conveyed, transferred, and assigned hereunder by Seller to Buyers, and should said peaceful possession of Buyers and/or its lessee P and S, Inc. be materially affected, interrupted, or deprived, then Seller shall be liable to Buyers and said lessee P and S, Inc. for any

and all actual damages incurred or sustained, and any such damages, to the extent of the unpaid principal balance thereof, shall likewise be a direct credit to the unpaid principal of said $324,000.-00 note to be executed and delivered by Buyers to Seller pursuant to provisions hereof. * * *"

Although a lis pendens notice was filed by Hartgraves during March, 1968, the suit was never brought to trial, and no judgment had been entered at the time of the trial in this case. Cross-appellant Bloch, a party and also attorney for appellees-cross-appellants in the contract negotiations and in this case testified that in order to clear the property of the lis pendens notice, so that cross-appellants P and S, et al., could effect a resale of the property, he acting for all of the cross-appellants purchased the claims of plaintiff Hartgraves in the Hartgraves law suit for $35,000.00 and cross-appellants asserted this $35,000.00 as a proper offset in the instant case. All testimony on this issue was given by Bloch, a party to the instant case.

The obligation assumed by the appellants-cross-appellees as to this claimed off-set was to promptly discharge and pay off any and all *final judgments,* if any, and *judgment* liens, if any, resulting from the Hartgraves law suit, and to maintain a diligent defense. There has been no judgment and no judgment lien in that suit. We find no evidence that the defendants therein, these cross-appellees, were not maintaining a diligent defense thereto; and if there is any such evidence in the record, as well as if there is any evidence that $35,000.00 was a reasonable evaluation of Hartgraves' claim, the trial court settled such questions against cross-appellants. Their cross point of error is overruled.

We find no reversible error in the record.

Affirmed.

NYE, Justice (dissenting).

I respectfully dissent.

The suit was based on a second lien promissory note. The appellees plead, among other things, certain offsets and credits due on the principal amount of this note. Among the various offsets allowed by the trial court, was one in the amount of $16,492.16.

Appellants attack this offset on appeal in a number of points of error. I would sustain these points and reverse and render judgment as to this amount.

A letter agreement modified the contract between the parties. It specified that all invoices on accounts payable, received within five days after the closing date set in the contract, were to be assumed by appellees. This was in addition to a specified amount agreed to be assumed and set out specifically in the contract. The only witness who testified as to this offset, admittedly failed to take into account the invoices received during this period of time. The proof therefor, as to the correctness of this offset, was insufficient as a matter of law.