## F. B. EWING ET AL. v. J. S. MILES.

### No. 1374.

**1. Pleading—Damages.**

In a plea by defendant for damages for wrongful sequestration of premises sued for an allegation that their rental value is one hundred dollars per month, all of which plaintiffs unlawfully converted to their own use, to defendant's damage, one thousand dollars, is sufficient on special demurrer.

**2. Lease—Contract for Renewal.**

A lease of premises by two owners in common gave the lessee right to renew for another year at the expiration of term, but provided that in case of sale of the premises by the lessors the lessee should surrender them to the purchaser at the end of the current year. A sale of his interest by one of the owners did not deprive the lessee of his right to renew.

**3. Lease—Forfeiture—Failure to Occupy.**

Failure of tenant to replevy and continue to occupy premises taken possession of by his lessors by writ of sequestration does not forfeit his rights under a lease by which he has agreed to occupy them.

**4. Same—Failure to Pay Rent.**

Breach of the covenant to pay rent does not forfeit possession by the lessee or confer a right of re-entry on the lessor unless the contract so provides.

**5. Renewal of Lease—Acts of Lessee.**

Where tenant having right of renewal for another year notified his lessor, a few days before the expiration of the term, that he would not surrender the premises, and held possession after the term expired until dispossessed by sequestration, he sufficiently manifested his election to renew the lease and made himself liable as tenant for another year.

**6. Same.**

The fact that the tenant had previously expressed his willingness to surrender possession at end of year would not prevent his abandoning that intention and electing to renew at expiration of term.

**7. Same—Estoppel.**

The fact that the landlord, after tenant had expressed his intention to surrender possession of premises at end of year, had incurred expenses in preparing to carry on business on the premises would not estop the tenant from afterwards insisting on his right to renew the lease without evidence that the expenses were incurred by reason of the tenant's promise to surrender.

**8. Landlord and Tenant—Costs.**

Where, in suit by landlord for possession of premises, they are taken from the tenant by sequestration and the tenant in reconvention seeks and recovers as damages the value of the possession for the term, he is entitled to recover also his costs, though by reason of his election to seek damages and not restitution of the premises plaintiff has recovered possession.

APPEAL from Tom Green County. Tried below before HON. J. W. TOMMINS.

Plaintiffs in their supplemental petition excepted generally to de-

fendant's plea in reconvention and cross bill and also specially as follows:

2d. * * * "because it (said cross bill) does not allege with sufficient certainty the facts upon which defendant claims that the lease therein mentioned was continued in force and has not been determined."

3d. * * * "because so much of said cross bill as seeks to recover damages against plaintiffs for unlawfully ejecting defendant is insufficient because it does not allege with certainty what kind of damages are claimed, and if exemplary damages are claimed no facts are alleged to support such a judgment nor are the facts pleaded alleged with sufficient certainty and clearness."

The allegations in defendant's plea in reconvention and cross bill to which the foregoing demurrer and special exceptions were addressed are as follows: "For special answer herein defendant says that heretofore, to-wit, on the 2d day of September, 1893, in peaceable and quiet possession of the lands and premises, described in plaintiff's pleading, holding and owning the same under a lease from the owners, Ewing & Frost, from the ...... day of ........, 1891, until the 3d day of August, 1896, and that under said lease, a copy of which is heretofore attached and made a part hereof, defendant was the owner and possessor of the property described in plaintiff's petition and that said lease contract is now and has continuously from the date thereof been in full force and effect and has never in any manner been cancelled, forfeited, or otherwise annulled."

"That on said 2d day of September, 1893, plaintiffs unlawfully, wrongfully and maliciously sued out a writ of sequestration in this case, and took possession of said premises and have continuously since said day unlawfully and forcibly held possession thereof, that the rental value of said property is one hundred dollars per month, all of which is by plaintiffs unlawfully converted to their own use, to defendants' damage one thousand dollars ($1,000)."

The court overruled all of plaintiffs' said demurrer and exceptions, to which ruling plaintiffs excepted.

*Cochran & Hill* and *Joseph Spence, Jr.*, for appellants.—The court erred in overruling appellants' general and special exceptions to defendant's original answer and cross bill as set out in plaintiffs' first supplemental petition.

The court erred in its conclusion of fact in finding and holding that on September 2, 1893, defendant had elected to hold said premises for one year from and after September 1, 1893, under his said lease

The court erred in its conclusion of law in holding that "under said lease defendant had the right to elect to continue said lease for one year under the terms of original lease * * * * * * from September 1, 1893; and further, that plaintiff had no right to dispossess him (defendant) for said term and, having done so, that defendant should recover the difference between the contract price and the reasonable rental value

of said premises, to-wit, $25 per month for twelve months." Appellee's rights as lessee in the leased premises became forfeited at end of the contract year on August 31, 1893. 1. By sale from Frost to Lowe. 2. By failure to occupy the premises after August 31, 1893. 3. By failure to pay the monthly installments of rents as they fell due under terms of the contract. 4. All the facts in evidence taken together show conclusively an election by the lessee on and prior to August 31, 1893, to surrender possession and terminate his tenancy, and not an election to renew for the term of another twelve months after August 31, 1893, as found by the court, and under the law applicable to the facts proven, plaintiffs had the right to dispossess defendant at any time after August 31, 1893. 5. Because prior to August 31, 1893, there was no renewal or demand for renewal or election by defendant to renew his contract for another term of twelve months after August 31, 1893, but defendant had elected to terminate his contract on August 31, 1893, and in fact had prior to that date abandoned the leased premises and moved into his new stable on the lot adjoining the leased premises.

On effect of sale. Dunn v. Jaffray, 13 Pac. Rep., 781. In that case a firm sold to one of its partners. Starkey v. Horton, 31 N. W. Rep., 626; Wallace v. Bahlhorn, 35 N. W. Rep., 834; O'Connor v. Daily, 109 Mass., 235; Munigle v. Boston, 3 Allen, 230; Knowles v. Hull, 97 Mass., 206; Callaghan v. Hawkes, 121 Mass., 298; Shaw v. Appleton, 37 N. E. Rep., 372; Hunnewell v. Bangs, 36 N. E. Rep., 751; Aydlett v. Pendleton, 18 S. E. Rep., 971. Payment of the rents as stipulated in the contract is an absolute prerequisite to right of renewal. Lyons v. Osborne, 26 Pac. Rep., 31; Behrman v. Barto, 54 Cal., 131. Election to renew must be made by lessee before end of the current year, and notice of such election must be given to lessor in order to compel renewal for the additional term. Bullock v. Grinstead, 24 S. W. Rep., 867.

The court erred in not holding and concluding from all the evidence in the case that defendant was estopped from withholding possession of the leased premises from plaintiff after expiration of the second contract year, to-wit, on August 31, 1893, because the evidence conclusively shows, first, that defendant's rights under the contract of lease, were terminated at the end of the current year by sale of the property from Frost to Lowe on May 29, 1893; second, that defendant, having failed to pay his monthly installments of rents as they fell due under the lease contract, had no right, under the terms of the contract, to elect to renew said contract after the expiration of the current contract year, on August 31, 1893, as the rights to renew for the succeeding years, under said contract was by its terms made dependent on prompt payment of the monthly rental; third, that defendant is and was estopped by his own acts and conduct to refuse to surrender possession to plaintiff at the expiration of the contract year, ending August 31, 1893.

The judgment of the court is contrary to the law and the evidence, and against the great preponderance of the evidence in this: First, the

undisputed testimony shows that defendant's right to retain possession of the leased premises after August 31, 1893, and his right under the contract to renew the lease for one year, beginning September 1, 1893, was terminated under terms of the contract by the sale from Frost to Lowe on May 29, 1893; second, the undisputed testimony further shows that at the expiration of the contract year on August 31, 1893, defendant was indebted to plaintiffs for rents due under the contract for the months of May, June, July and August, 1893, and by "such failure to pay monthly installments of rent as they fell due defendant's right to renew his lease for term of one year after August 31, 1893, became forfeited and plaintiffs were entitled to re-enter and take possession on September 1, 1893;" third, the evidence further shows that defendant promised and by his acts and conduct induced plaintiffs to believe he would surrender possession to them on September 1, 1893, and acting on said promise and relying on the belief induced by said acts and conduct of defendant, plaintiffs changed their position for the worse, and expended money in buying horses, hacks and buggies for use of plaintiff Lowe in engaging in the livery stable business on said leased premises on September 1, 1893, that said Lowe gave up a valuable employment for the purpose of engaging in said business, relying on defendant's promise to surrender possession to him on September 1, 1893, which he would not otherwise have done, and that defendant's sole and only reason for not peaceably surrendering possession to plaintiffs on September 1, 1893, was because plaintiff Ewing refused to accept defendant's unsecured note for rent due and unpaid on September 1, 1893. Authorities same as above cited, also Grenier v. Cota, 52 N. W. Rep., 77 and 78; Westbrook v. Guderian, 22 S. W. Rep., 59.

Plaintiffs having recovered the possession of the premises sued for were entitled to recover all costs against defendant. Rev. Stats., art. 1421; Cyrus v. Hicks, 20 Texas, 483; Dearborn v. Phillips, 21 Texas, 449.

No brief for appellees has reached Reporter.

FISHER, CHIEF JUSTICE.—*Statement of Case.*—F. B. Ewing and Robert Lowe sued the appellee, Miles, in trespass to try title seeking to recover certain lands and buildings in the possession of Miles and used by him as a livery stable, and also for rents. At time of suit, September 2, 1893, a writ of sequestration was sued out and upon the same day levied upon the premises in controversy. The property remained in the hands of the sheriff executing the writ until the 15th September, 1893, when it was replevied by the appellants, and it has remained in their possession since then. The appellee in his answer claimed damages arising from the levy of the writ of sequestration, and averred that he was entitled to the possession of the property under a lease contract from Appellant Ewing, and one Frost, and that he was wrongfully deprived of possession by virtue of the levy of the writ of sequestration. In replication to this defense appellants pleaded that the rights of appellee under the lease contract expired on September 1, 1893, and that appellants

were entitled to re-entry and possession of the premises because the contract of lease provided that if the lessors should sell the property the lease should expire and terminate on the first day of September of the year in which a sale may be made, and that a sale was made in May, 1893, by Frost selling his interest in the property to Lowe, and thus, although the contract of lease provided that a renewal of the lease may be made at the end of the yearly term, to-wit, September 1, that in fact no renewal was made and the lessee was notified of the sale before then and promised to surrender possession, and that he had vacated the property and refused also to pay the amount of rent due, which was fifty dollars per month, and which was payable monthly, and there was due and owing rent for four months when premises was taken under writ of sequestration, and that the appellee was estopped in asserting any right under the lease to the premises because after the purchase by appellant Lowe of a half interest therein appellee agreed to surrender possession on the first day of September, 1893, and upon that understanding, Lowe purchased horses and buggies, etc., in order to use in the livery business which he intended to carry on in the premises in question. The case below was tried before the court without a jury, and judgment was rendered in appellants' favor for the premises sued for, and against them for three hundred dollars damages for wrongfully seizing the property under the writ of sequestration.

We find the following as the facts in the case: Sept. 1, 1891, and prior thereto, F. B. Ewing and J. R. Frost were the owners of the property in controversy. On that day they executed and delivered to appellant J. S. Miles the following lease contract, which was also joined in by Miles:

"State of Texas,
Tom Green County.

"This agreement made and entered into this first day of September, 1891, by and between F. B. Ewing and J. R. Frost, as lessors, acting herein by said F. B. Ewing of the first part and J. S. Miles, lessee, of the second part, witnesseth:

"1. That for the consideration hereinafter specified and agreed to be paid, the said parties of the first part have leased and let, and by these presents do lease and let unto the said party of the second part, J. S. Miles, for the full term of one year from and after September 1, 1891, next ensuing, the following described premises, situate in Tom Green county, State of Texas, to-wit: The west half of lots numbers twenty-four and twenty-seven, in block "C" of and in the city of San Angelo. Also the east six feet and five inches of lots numbers twenty-three and twenty-eight in said block "C" of the city of San Angelo, said property fronts 56 feet and 5 inches on Concho Avenue and runs back between parallel lines 190 feet at right angles to said Concho Avenue and is known as the San Angelo stables. To have and to hold said premises with the rights and privileges thereto belonging unto him the said

J. S. Miles, lessee, from September 1, 1891, up to and including the 31st day of August, 1892.

"2.   The consideration for this lease is the monthly rental of fifty dollars per month to be paid at the end of each month during the term aforesaid in cash, and to secure the payment of the same it is understood and agreed that the lessors shall have and retain the landlords' lien on all the personal property of the lessee situate in said leased premises.

"3.   And the lessee promises and agrees to occupy said premises for the term aforesaid and during any renewal of this lease, as the tenant of said lessors to pay the monthly rental above specified promptly at the end of each current month and not to sublet said premises or assign this lease without the written consent of the lessors first obtained.

"4.   It is understood and agreed that the lessee shall have the right hereby expressly granted him to renew this lease at the end of the term hereof for another term of twelve months next succeeding the term hereof and so on for four consecutive years from August 31, 1892, at the same rental as above specified, payable at the end of each month, provided that the lessors shall have the right at any time to sell said premises and in case of sale the lessee shall surrender possession of said premises to the purchaser at the end of the current year during which the sale shall be made, and such sale shall terminate the rights of the lessee at the end of each current year; but nothing herein shall be construed to require the lessee to surrender possession except at the end of the current year during which the sale shall be made, if the rents shall be promptly paid as herein stipulated.

Witness the hands of the parties, this day and date first above written.

EWING & FROST, Lessors,<br>Per F. B. Ewing.<br>J. S. Miles, Lessee.

May 29, 1893, J. R. Frost sold and conveyed to appellant Lowe an undivided half interest in the property in controversy.

Under the foregoing lease Miles went into possession of the property and used it until dispossessed by the writ of sequestration on the second day of September, 1893, and upon that day a writ of sequestration was levied upon the property at the instance of appellants, and by virtue thereof appellee was dispossessed of the property. There is evidence that the appellee had abandoned the leased property prior to the time the writ was levied, but he testified that such was not the case, and in deference to the judgment below we find that he was using the property when levied upon, and that he had not forfeited his right thereto by abandoning it. We also find that at the date of the levy appellee was owing at least three months' rent which was due at that time and which on the 28th day of August, 1893, he refused to pay, but agreed to execute his note therefor, and upon that day refused to surrender possession of the property in controversy to appellants. A few days

after the sale by Frost to Lowe, Miles was informed thereof and a notice of sixty days prior to September 1, 1893, was given him by the agent of appellants that possession would· be required September 1, 1893. June 10, 1893, appellee Miles wrote to appellant F. B. Ewing the following contained in a letter: "I understand that Mr. Lowe has bought one-half interest in the stable and he will want the stable by September 1, 1893. If you intend to take the stable by this time please let me know, as under our contract I have the stable for five years unless you sell, and then I am to give possession in September, about the first, of each year. I must have sixty days notice, as this is our contract, and I will have to have this much at least. You can get the stable by selling. I am willing. All I want is our contract carried out. Please do me the favor to send me a written notice that you will expect the stable by next September or October, just as you wish, but I ask for sixty days." A reply was written to this letter stating Lowe would "want" possession on September 1, 1893. In June or July, 1893, Lowe informed Miles that he wanted possession of the property by September 1, 1893. Miles at the time of his possession was occupying the property as a livery stable. Lowe's intention was, after September 1, to occupy the property as a livery stable, which fact was known to Miles when Lowe told him that he wanted possession by September 1, 1893. After Lowe's purchase and after the letter was written by Miles to Ewing as heretofore set out, Ewing, on behalf of Lowe, purchased horses, buggies and hacks to be used by Lowe in the livery business, which fact was known to Miles before August 28, 1893. And on that date Miles refused to surrender possession of the premises on September 1, 1893, and so informed Ewing to that effect, and continued in occupancy and possession thereof until dispossessed by levy of the writ of attachment on September 2, 1893, and since that time the property has been in the possession and use of appellants. September 1, 1892, there was no renewal of the lease contract except the fact that Miles during that year and 1893 up to September continued in possession and used the property as under the lease. There was not on September 1, 1893, or prior or subsequent thereto, a contract of renewal of the lease term between Miles and the lessors except wherein the lease gives Miles the right to renew coupled with his refusal to surrender possession September 1, 1893, together with his holding possession at that time and after until the levy of sequestration. The rental. value of the premises from September 1, 1893, to September 1, 1894, was $75 per month. Miles during this period was liable under the lease contract for rent at $50 per month. The evidence shows that lessee Miles was solvent when this suit was brought, and has been since the lease was executed.

*Opinion.*—The ruling of the trial court in overruling exceptions to the answer of appellee is made the ground for the first assignment of error. The answer, when properly construed, fixes the damages at the rental value of the premises, which is alleged to be a certain sum, and

avers that the defendant was wrongfully dispossessed of the premises and asks for judgment for restitution thereof and for its rental value. There was no error in this ruling. ·

The court below held under the facts that the appellee had elected before the seizure by sequestration to hold the possession under the lease for another year, and being thus deprived of possession he was entitled to recover for that period as his damages the difference between the amount he agreed to pay as the monthly rent and the rental value of the premises, which difference the court finds to be $25 per month.

This conclusion of the trial court is by appellants assailed for the reasons: 1. Under the lease contract appellee's term and right of possession expired on September 1, 1893, by reason of the fact that Frost, one of the lessors, had sold to appellant Lowe. The lease contract providing for a termination of the term when a sale was made. 2. The failure of appellee to occupy the premises after August 31, 1893. 3. The removal from and abandonment of the premises prior to September 1, 1893. 4. The failure to pay the monthly installments of rent as they · fell due. 5. Because there was no renewal of the lease for a term commencing September 1, 1893, or election to that effect by appellee, but, upon the contrary, he had promised to surrender possession at that time, and had elected to terminate the lease then. 6. Because the conduct of appellee in promising to surrender possession and leading the appellants to so believe, taken with the fact that he knew that appellant Lowe desired and intended to use the premises for a livery stable after September 1, 1893, and that he intended to purchase horses and hacks, etc., to be used in that business, and which were subsequently so purchased, raises an estoppel against the right of appellee to possession of the premises after September 1, 1893.

The first ground of objection may be disposed of solely by the terms of the lease contract. That instrument provides that the lessee may renew the lease at the end of the time fixed unless the "lessors" shall sell "said premises," and in case of sale shall surrender possession of said premises to the purchaser at the end of the contract year, etc.

The plain significance of this covenant is that in order to defeat the right of the lessee to renew the term there must be a sale of the entire premises by the lessors, and not a sale of a part or a sale of the interest of one of the lessors. The sale by Frost of his interest was not such a sale as would terminate the lease.

The second and third grounds of objection are untenable. Appellants cannot insist that the failure of appellee to occupy the premises after August 31, 1893, was a forfeiture of his rights under the lease when by reason of their conduct in causing the levy of the writ of sequestration the appellee was deprived of such use and possession. The effect of the levy was to deprive him of possession, and as this state of affairs was brought about by appellants, they cannot be heard to complain or to claim that a forfeiture resulted by reason of the lessee's failure of occupancy. If the meaning of these objections is that appellee ceased to

occupy and use the premises by virtue of the lease after the term had expired for that year and before the seizure by the writ of sequestration, or that he had abandoned the premises before his term expired and by reason thereof a forfeiture resulted, with a consequent right of re-entry by the lessors, then we may look to the facts in order to settle the question. Appellee Miles testified that he did not surrender possession of the premises or abandon it, but continued to occupy it until dispossessed by the sheriff in levying the writ of sequestration, which levy the return shows was made on September 2, 1893. Although there may be a conflict in the evidence on this branch of the case we must follow the judgment of the court below and regard it as settling this question. In reply to the fourth objection we may state the law to be well settled that a breach of the covenant to pay rent does not breed a forfeiture of possession by the lessee or a right of re-entry by the lessor unless the contract provides for a forfeiture in the event of such failure. 12 Am. & Eng. Encycl. Law, 758k-758l; 2 Taylor's Landlord & Tenant, 8th Edition, sec. 494; Brown v. Bragg, 22 Ind., 122; Johnson v. Gurley, 52 Texas, 236. The remedy of the lessor in a case where the tenant refused to pay the rent and the contract does not provide for a forfeiture in that event, would be for damages, unless possibly the tenant was insolvent, which is not shown to be the case here. There are a few cases that recognize the right of the lessor to re-entry where the lessee is insolvent and defaults in payment of rent.

The fifth ground of objection is opposed to the rights of the lessee under the contract when considered with the facts showing a renewal of the lease. The right of the lessee by the terms of the contract to renew, does not depend upon a mutual agreement of the parties to the contract independent of that instrument, but the right of the lessee in that respect depends upon the fact that he has elected to remain in possession for another term as lessee under the original contract. The right to hold possession and to extend the lease is expressly granted by the terms of the instrument, and when the lessee, within a reasonable time, expresses his purpose to continue and holds possession, and this is followed by a use and possession consistent with his rights under the instrument as lessee, that is an election to exercise the privilege granted, and from that time he would be bound as lessee. The test in determining if the lessee has elected to extend the term is suggested by the query, Could he be held bound under the contract as lessee? The facts show that Miles, a day or so before his term would expire under the contract, informed the lessor, Ewing, that he would not surrender possession at the end of the then present term, and he remained in possession until the writ of sequestration was executed, which was after the ending of the old term. Now, suppose that the lessors had not disturbed Miles in his possession, could Miles, under this state of facts, be relieved of liability for rent?

When Miles expressed his purpose to continue to hold possession under the lease, and did in fact do so, he then became bound and liable as lessee, and he would not have been permitted to deny this relationship,.

and would have been held to all of the liabilities and duties resting upon him as tenant under the contract. The fact that Miles may have previously expressed his willingness and purpose to surrender possession would not defeat his right to abandon that intention and to subsequently elect to continue in possession under the lease unless such previous arrangement was based upon a consideration, which is not shown to be the case. Nor would the fact that when he finally expressed his intention to hold the premises he assigned therefor a reason which may be entitled to little or no weight or consideration, affect his right to renew the term under the lease. His right of possession and renewal was not dependent upon a reason therefor, or whether a reason given was with or without merit.

In disposing of the sixth ground of objection it is clear under the facts that the doctrine of estoppel could not apply, because it does not appear from the evidence that appellant Lowe in purchasing the premises or horses and buggies, etc., was influenced thereto by reason of the conduct of the appellee. In order for estoppel to exist the conduct of one must influence the acts of the other, or it must be calculated to have that effect. The conduct of Miles may be considered as calculated to influence the conduct of Lowe. In other words, it was such conduct as may have led one of ordinary prudence to believe that possession of the premises would be surrendered on the first of September, but there is not a word of evidence that shows that Lowe, or Ewing for him, acted upon this conduct when they purchased horses and other property to be used in the livery business. The record does not inform us that Lowe or Ewing would not have purchased this property but for the belief that Miles would surrender possession. For aught we may know they probably would have purchased the property, although they did not expect to get possession of the premises in controversy. It is true they testify that the purpose was that Lowe would go into possession of the premises and use it as a livery stable on September 1, 1893, and that they expected possession then from Miles, but this does not establish the fact that they were induced to purchase by reason of such expectancy and promise of Miles.

The court properly taxed the cost against the appellants. The facts show that appellee was entitled to possession and that he was wrongfully deprived of it, and because he may have elected to sue for his damages instead of combating the right of appellants to a judgment for possession, and for that reason they obtain such a judgment, would not relieve them from the consequences of their trespass, one of which is the costs of litigation in which appellee seeks his redress. The fact that appellee recovered judgment for his damages arising from the disturbance of his possession places the original wrong upon the appellants and establishes his right to a judgment for the costs.

*Affirmed.*

Delivered December 18, 1895.

Writ of error refused.