Powell, Wirtz, Rauhut & McGinnis, Wm. A. Brown, Austin, for appellant.

**Eugene H. CARTLEDGE et al., Appellants,**

v.

**SINCLAIR REFINING COMPANY, Appellee.**

**No. 10324.**

Court of Civil Appeals of Texas.

Austin.

June 1, 1955.

Sloan Blair, Ft. Worth, James R. Meyers, Coleman Gay, Austin, for appellee.

HUGHES, Justice.

This suit was instituted by appellants, W. R. Cartledge and his son, Eugene H. Cartledge, against Sinclair Refining Company to cancel a lease covering Lot 22, Outlot 22, Division D, Horst Addition to the City of Austin, executed October 14, 1947, by W. R. Cartledge and his wife, Mrs. Josephine Cartledge. The primary term of the lease was ten years commencing April 26, 1948. Dependent upon cancellation consequential damages were sought.

The only ground pleaded as a basis for termination of the lease was the failure of Sinclair to pay stipulated rents as due.

Both parties moved for summary judgment, the motion of appellee being granted and that of appellants being denied. Judgment was rendered that appellants take nothing by their suit.

The facts are undisputed.

With regard to the payment of rents the lease provided:

"* * * all rentals hereunder to be paid monthly in advance not later than the 10th day of each and every month, in lawful money of the United States of America and, unless otherwise directed by Lessors, may be paid by check or draft payable to the order of Mrs. Josephine Cartledge, and mailed to P. O. Box 113, Marfa, Texas, or to such

other address as Lessors may from time to time hereafter designate in writing."

The forfeiture provision of the lease reads:

"In the event Lessee shall be in default in the payment of rentals or other charges hereunder, or otherwise, and shall remain in default for a period of thirty (30) days after notice from Lessors to it of such default, Lessors shall have the right and privilege of terminating this lease and declaring the same at an end and of entering upon and taking possession of said real estate and shall have the remedies now or hereafter provided by law for recovery of rent, repossession of the premises and damages occasioned by such default."

The lease was made binding upon the "heirs, personal representatives and assigns of Lessors and upon the successors and assigns of Lessee."

Mrs. Josephine Cartledge died in May, 1950. She left a will, duly probated, by the terms of which her son, Eugene H. Cartledge, was devised a one half interest in the above described lot.

There was no default in the payment of rents prior to the death of Mrs. Cartledge, Sinclair making payment to her by check as authorized by the lease.

Several months prior to the death of Mrs. Cartledge she became, because of illness, unable to endorse the rent checks. Sinclair upon being advised of this situation instructed Mr. W. R. Cartledge to endorse the checks for deposit to account of Mrs. Josephine Cartledge "without any signature."

This practice, commenced before the death of Mrs. Cartledge, continued for more than three years after the death of Mrs. Cartledge, Sinclair not having been advised of her demise. The account in which the rents were deposited was drawn upon by appellants and there is no question concerning the disposition of these funds.

Sinclair first learned of Mrs. Cartledge's death about July 25, 1953, when an indemnity bond sent by it to Mrs. Cartledge in connection with replacement of a lost check was returned showing execution by "Eugene H. Cartledge, Ind. Executor of the Estate of Mrs. J. Cartledge and/or Mrs. Josephine Cartledge, deceased."

The rent for August, 1953 was paid by Sinclair on time.

On August 16, 1953, Mr. Eugene H. Cartledge wrote Sinclair a letter regarding a proposed sale of the property in which he stated "The reason for the delay, of course, was that you addressed the reply to my father who knew nothing of my letter inasmuch as the filling station property I wrote Mr. Conley about is mine, having been inherited from my mother."

In reply to this letter Sinclair on August 19, 1953, wrote Mr. Cartledge a letter in which it stated:

"You state that the property covered by this lease is now owned by you through an inheritance from your mother. This is the first information we have received in connection with your ownership of the property and we are asking that you please furnish us with a copy of the probate proceedings showing that the property now belongs to you. This will be necessary in order for us to prepare rental checks in your name."

Following payment of the August 1953 rent Sinclair suspended payment of rents and heard nothing from either Mr. Cartledge until a letter from the son dated January 29, 1954, was received. In this letter he stated:

"For several months now I have not received any rent checks from you. Mr. Lilley said he would need a copy of the probate proceedings to make the rent checks out in my name. The filling station was owned by my father, Mr. W. R. Cartledge and my mother, Josephine Cartledge who died in 1950 and willed her one-half interest to me, as you can tell by the records in the courthouse. I don't care about changing the name on the checks because I am execu-

-tor of my mother's estate. I need the rent right away so just send it the way you used to send it."

Sinclair answered this letter February 1, 1954, by letter stating:

"We have asked our Legal Department at Fort Worth to let us know why they have not as yet been able to arrange to resume the issuance of rental checks under the lease in question. It is assumed that some delay has been experienced in obtaining the necessary papers."

On February 4, 1954, Sinclair's Legal Department wrote Mr. Eugene W.[1] Cartledge as follows:

"If you will furnish us with a certified copy of letters testamentary showing that you have been named as Independent Executor of the Estate of Josephine Cartledge, Deceased, we will arrange for the prompt issuance of checks covering rental accrued to date, and will then be in a position to continue the payment of rental to you as independent executor."

On February 13, 1954, Mr. Cartledge answered Sinclair's letter from its Legal Department as follows:

"The lawyer was supposed to have done everything that was necessary when my mother died and I am sure that you will find all the necessary papers in the court house. I am enclosing a copy of the will. There should not be any trouble about the checks because everything worked fine until just a few months ago and all I want you to do is just what you were doing all along."

On February 15, 1954, Sinclair's attorney wrote Mr. Eugene W. Cartledge:

"You failed to forward to me the letters testamentary showing your appointment as independent executor and I have, therefore, written the County Clerk at Alpine for this.

"Our lease is executed by W. R. Cartledge and Josephine Cartledge. I am not clear as to just what interest W. R. Cartledge has in the property. The lease provides that rentals shall be paid to Josephine Cartledge, and when I have received letters testamentary, together with certified copy of the probate proceedings, we should be in position to pay rentals."

About February 19, 1954, Sinclair sent to Mr. Eugene W. Cartledge its check for $900 payable to the order of Eugene W. Cartledge, Independent Executor, Estate of Mrs. Josephine Cartledge, deceased. Admittedly this check would have cleared up all arrears in rent.

Mr. E. H. Cartledge returned this check to Sinclair by letter of February 26, 1954, in which he stated:

"I am returning the check for $900.00 which you sent me which was made payable to Eugene W. Cartledge, Independent Executor of the estate of Josephine Cartledge. I took it to the bank and they did not want to cash it because that is not my name and I am not an independent executor. I was appointed executor of my mothers estate but the estate was closed several years ago. Also my father has an interest in the property.

"I also got a letter from Mr. Blair in Fort Worth asking me to get my father to authorize you to make the rent check payable to me, but I don't want to ask him to do that. There is no need for it because everything worked out all right the way you sent the checks before. All I want you to do is to send the checks the way you always did. I am sending a copy of this letter to Mr. Blair so he will know I sent the check back to you."

On March 4, 1954, Sinclair received notice from appellants, through their attorneys, that they were exercising their right to terminate the lease.

---

1. All italics in this opinion are supplied.

Forfeiture of the lease under the circumstances outlined above would certainly have been inequitable and, in our opinion, would have been without the sanction of law.

Upon the death of Mrs. Cartledge the right to receive her portion of the rents passed to her successor in interest by will or by law and Sinclair was duty bound to pay rent to the proper person. 32 Am.Jur. p. 377.

The precise question presented is whether Sinclair had the sole responsibility for ascertaining the persons entitled to the rents without any aid or cooperation from any person asserting a right to such rents.

The parties have expressed inability to find any cases directly in point on this question and neither have we. By analogy, however, we believe that the rule applicable to bills and notes should furnish a guide here. The rule as found in 10 C.J.S., Bills and Notes, § 364, p. 884, is that "if the authority of a person presenting paper [for payment] is questioned by the maker or the acceptor, and refusal to comply with the demand is based on a supposed want of authority, *such authority must be shown.*" Two cases are cited in support of this rule: Caine v. Foreman, 106 Cal.App. 636, 289 P. 929 and United States v. Schuermann, D.C.Mo., 106 F.Supp. 86, 89. In the latter case the Court said: "Protection of the maker of the note should be given serious consideration."

We believe that the protection given makers of bills and notes should be extended to lessors and that a person demanding rents should be required to identify himself as being the person entitled to them. This rule is not only in accord with business customs in innumerable analogous every day transactions but it is a rule of common courtesy as well. We believe it to be a sound rule of law.

Circumstances, of course, could make the demand of credentials oppressive or unreasonable. We find just the opposite here. Every act of Sinclair evidences good faith and a desire to be reasonable and a will-

ingness to pay the rents to the proper persons. In order to be reasonable it was not required that Sinclair be imprudent or that it abandon sound business practices.

Appellants suggest that if Sinclair had any doubts about the matter it should have filed a bill of interpleader. No conflicting claims or demands were being made upon Sinclair and such proceedings would have been improper.

We find, as did the trial court, that Sinclair, under this record and as a matter of law, was justified in suspending payment of rents as it did and that the judgment of the trial court refusing to declare a forfeiture of the lease should be and is affirmed.

Affirmed.