John M. **JACKSON** and Steven Michael Chapman, Plaintiffs,

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. No. 3–85–0008–H.

United States District Court,
N.D. Texas,
Dallas Division.

April 10, 1985.

Peter S. Chantilis, Dallas, Tex., for plaintiffs.

Paula Mastropieri-Billingsley, Asst. U.S. Atty., Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

This case is before the Court on Plaintiffs' Motion for Summary Judgment, filed February 22, 1985; Defendant's Motion for Summary Judgment, filed February 22, 1985; Plaintiffs' Response, filed March 14, 1985; Defendant's Opposition, filed March 12, 1985; and Plaintiffs' Response to Defendant's Opposition, filed March 27, 1985.

### Factual Background

This is an action for forcible detainer removed to this Court from Justice of the Peace Court pursuant to 28 U.S.C. §§ 1441 and 1442. The facts are stipulated as follows:

Plaintiffs purchased real property and a building located at 3400 University Boulevard, Dallas, Texas, on or about June 5, 1984, by warranty dead from Leon C. and Elsie W. Jackson. Plaintiff Jackson is no relation to the vendors. The building houses a number of tenants, among whom is the Postal Service, which has leased the ground floor of the building for use as a post office continuously from 1956.

A new lease agreement had been reached on August 1, 1978, Exhibit D to Stipulation. This agreement was renewed on or about January 23, 1984, for five years, until January 22, 1989.

On or about June 12, 1984, Plaintiff Jackson mailed a "memorandum" to all of the tenants in the building, informing them of the change in ownership and requesting all future payments be made to "John M. Jackson, Trustee, 3400 University Boulevard, Suite 201, Dallas, Texas 75205." Exhibit G.

On June 15, 1984, the Postal Service notified the former owners that it required verification and documentation for the change in ownership of the Leased Premises, by Postal Service Form 7461, and also requested completion of Form 7426, Designation of Emergency Repairmen by the new owners. To date, these forms have not been completed and returned to the Postal Service.

During the fall of 1984, Dorothy Buford, Realty Transaction Technician for the Postal Service was contacted by Plaintiffs by telephone. She stated that rental payments had been suspended pending receipt of the requested verification and documentation. Rental payments have been suspended by the Postal Service from June 1984 until December 31, 1984.

On December 19, 1984, Plaintiffs gave the Postal Service written notice to vacate the premises within three days after delivery of the notice for default in the payment of rent, pursuant to Texas Property Code § 24.005, Tex.Rev.Civ.Stat.Ann. On December 20, 1984, the Postal Service responded, Exhibit X, threatening criminal prosecution for obstruction of mail. By this time, however, the Postal Service had discovered the warranty deed on its own, and indicated that processing of a check for back rents was underway.

On December 27, 1984, Plaintiffs commenced their forcible detainer proceeding. A tender of back rent was refused by Plaintiffs on January 3, 1985.

## Discussion

The threshold question requiring resolution is whether this case is a routine (although not for federal court) landlord-tenant matter to be resolved with reference to Texas law, or an inquiry to be governed by a federal common law of real property.

■ Unlike other agencies of the federal government, the Postal Service is intended to operate in a "business-like" fashion, *Beneficial Finance Company of New York, Inc. v. Dallas*, 571 F.2d 125 (2d Cir. 1978), removed from the political sphere and authorized to act as an independent establishment. This policy would be undercut if, as Defendant argues, the ordinary strictures and expectations of landlord-tenant law were diluted by the application of some global and nebulous form of federal common-law.

■ In *Powers v. United States Postal Service*, 671 F.2d 1041 (7th Cir.1982), this identical issue was decided after examining the *Clearfield Trust* [*v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943)] font of federal common law, the "tide of case law running strongly against the idea that there is a federal common law of real property", Posnerian economic theory, and the absence of any such law to apply; the Court concluded that state law should apply. This analysis is exhaustive and persuasive.

Accordingly, this Court rejects Defendant's contention that the entire mass of federal regulations and statutes are incorporated in government contracts as a matter of law. *See Clem Perrin Marine Towing v. Panama Canal Co.*, 730 F.2d 186, 188 (5th Cir.1984). Unless some other document is specifically incorporated in the parties' lease by statute or the agreement itself, it should not govern the relationship.

■ The Postal Service bases its actions on Section 8–5 of the USPS Realty Acquisition and Management Handbook, which states:

8–501 CHANGE OF OWNERSHIP

8–501.1 Title Transfer. When the contracting officer is notified of a change in ownership of postal facilities, the contracting officer must:

a. Acknowledge the notification and request satisfactory evidence of change of ownership. A copy of the deed, or joint

execution of 7461 ... by the former owner and new owner must be requested.

These provisions are not incorporated in the lease agreement by reference or by statute. Indeed, Plaintiffs represent that they are not published in the Federal Register or available to the general public. If the general public has no reason or means to be aware of these provisions, this handbook can hardly restrict their rights.

█ Even if these provisions were somehow included in the lease, they do not impose any duty or obligation on the new owner. Plaintiffs sent a memorandum notifying all tenants of the change, thus triggering the concerns of the handbook. Defendant did not acknowledge this memorandum, as the handbook appropriately suggests.

The lease agreement itself sheds some light on the actions to be taken in situations such as this:

18. Assignment of Claims.

(a) ... No assignment ... will be recognized as valid and binding upon the Postal Service as written notice of the assignment ..., together with a true copy of the instrument of assignment, is filed with (i) the Contracting Officer ... and (iii) the disbursing officer ..., and the Contracting Officer has acknowledged the assignment in writing.

(b) Assignment of this lease or any interest in this lease other than in accordance with the provisions of this clause shall be grounds for annulment of the lease at the option of the postal service.

Lease Agreement, ¶ 18.

This theme is repeated in the General Conditions of the lease at ¶ 14:

Neither this contract nor any interest therein shall be transferred by the party to whom such contract is given to any other party, and any such transfer may be cause for annulment of the contract transferred, so far as the Postal Service is concerned....

Plaintiffs are, of course, bound by these conditions. They have not provided the Postal Service with a true copy of the instrument. The purpose of these provisions is the salutary one of enabling the government always to know with whom it is dealing. *Hobbs v. McClean*, 117 U.S. 567, 576, 6 S.Ct. 870, 874, 29 L.Ed. 940 (1886).

Rather than immediately terminating the lease, which was not in anyone's particular interest at the time, Defendant sought appropriate documentation of the transfer from the previous owners, with whom the Postal Service had been dealing for a number of years and from whom reliable information would likely be forthcoming. No such information was provided.

█ Plaintiffs certainly had the responsibility to aid and cooperate with Defendant in ascertaining the entitlement to rents. A person demanding rents should be required to identify himself as being the person entitled to them. *Cartledge v. Sinclair Refining Co.*, 280 S.W.2d 312, 315 (Tex.Civ.App.—Austin, 1955, no writ). This rule is not only in accord with business customs in innumerable analogous everyday transactions but it is a rule of common courtesy as well. *Id.* Plaintiffs were, however, not asked for such identification until later in the fall of 1984. Stipulation at 4. Nevertheless, Plaintiffs refused to provide it.

█ The assignment clause in the lease not having been properly activated, the previous owners were presumably entitled to continue receiving the monthly rent. As noted above, Defendant failed to pay rent to anybody for approximately six months. This was inappropriate. *Marlow v. Medlin*, 558 S.W.2d 933, 939 (Tex.Civ.App.—Waco, 1977, no writ).

Defendant's failure to pay rent to either Plaintiffs or the previous owners was untenable in two respects. If, as Defendant maintains, Plaintiffs were not sufficiently documented as owners, then it must follow that, as far as Defendant was concerned, the previous owners were not divested of their ownership and were entitled to the

continued receipt of rent. Also, if neither Plaintiffs nor the previous owners were to produce the requested documentation, Defendant would apparently enjoy a rent-free occupancy in perpetuity.

Regardless of the dubious balance of equities through the summer and fall of 1984, Plaintiffs' relief can be granted solely on the events following December 19, 1984. On that date, the Postal Service located a copy of the deed in question on its own initiative, and recognized that a conveyance had indeed occurred in June. At that point, irrespective of anything that went before, the back rent unquestionably became due. On December 20, 1984, Defendant was served with Notice to Vacate. Although there was no issue remaining as to the propriety of the demand, no tender was made until December 31, 1984. Plaintiffs were thus entitled to commence their forcible detainer action, as they did, on December 27.

The primary obligation of a tenant is to pay rent. 35 Tex.Jur.2d, *Landlord and Tenant* § 137. Whether the obligation in this case ran to the previous owners through December 19, or to Plaintiffs on or after December 19, Defendant breached this obligation. Upon such a breach, the landlord may consider the lease terminated and may commence proceedings to recover possession of the premises. Plaintiffs gave the statutory notice, Tex. Prop.Code § 24.005, and Defendant failed to tender payment, thus committing a forcible detainer.

Accordingly, the Court is of the opinion that Plaintiffs' Motion for Summary Judgment should be, and hereby is, **GRANTED** and Defendant's Motion for Summary Judgment is **DENIED**.

Plaintiffs are directed to submit a proposed judgment, acceptable in form to Defendant, within fourteen days of the date of this Order.

SO ORDERED.