**BUFFALO PIPELINE COMPANY, Appellant,**

v.

**Bill W. BELL, Sr., and Bill W. Bell, Jr., Appellees.**

No. 13–84–121–CV.

Court of Appeals of Texas, Corpus Christi.

May 23, 1985.

Rehearing Denied May 23, 1985.

James F. Buchanan, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellant.

Charles W. Mann, Corpus Christi,. for appellees.

## OPINION ON MOTION FOR REHEARING

The Court's original opinion issued on February 21, 1985 is hereby withdrawn, and this opinion is substituted therefor.

UTTER, Justice.

This is a suit to cancel a surface lease. At trial, appellees claimed that the subject lease had been terminated when a lease renewal rental was tendered to appellees' predecessor-in-title rather than to appellees, the owners of the property on the rental due date. The trial was held before the court, which entered its judgment declaring that the lease had terminated and further ordering that appellees recover the reasonable rental value of the premises in the amount of $4,072.75 as damages for trespass to realty. We reverse and render the judgment of the trial court.

The record, as indicated by the trial court's findings of fact, reflects the following: On October 10, 1980, appellees acquired thirty (30) acres of land in Nueces County from E.J. Hood. At the time of appellees' acquisition of the land, Sun Pipeline Company was the lessee of a two (2) acre tract, which was a part of the thirty (30) acres acquired by appellees and which is the subject of this suit. At the time they acquired the property, appellees were aware that Sun Pipeline Company had the lease on the two (2) acre tract and that the property continued to be subject to the lease to Sun Pipeline Company. Shortly after they acquired the property, appellee Bill Bell, Sr., personally visited Sun Pipeline Company's office in Corpus Christi where he talked to Thomas Starr, an engineer with Sun Pipeline Company, and notified Sun Pipeline Company that appellees then owned the property. Starr referred appellee Bill Bell, Sr., to H.G. Humphrey, who was in charge of Sun Pipeline Company's right-of-way department in Longview.

In addition, the record, as indicated by the trial court's findings of fact, reflects: While in Sun Pipeline Company's Corpus Christi office, appellee Bill Bell, Sr., placed a long distance call to Humphrey in Longview. "In his telephone conversation with Bill Bell, H.G. Humphrey did not state to Bell that Sun Pipeline Co. would not recognize Bell as owner of the property nor give effect to the change ownership unless Bell sent Sun Pipeline a copy of his conveyance, nor did Humphrey state that Sun maintained a general policy to such effect, nor did Humphrey suggest or request from Bell a copy of his conveyance." "Bell in his conversation with Humphrey relayed the recording numbers for the conveyance by which Bell had acquired the property containing Sun's lease." There were no further communications of any kind between appellees and Sun Pipeline Company concerning the property.

Also, the record, as indicated by the trial court's findings of fact, further reflects: In July of 1981, Sun Pipeline Company mailed a check, the lease renewal rental payment, in the amount of $115.00 to appellees' predecessor-in-title, E.J. Hood. Hood endorsed the check and mailed it to appellee Bill Bell, Sr., at his Corpus Christi address. According to appellee Bill Bell, Sr., he never received the check from Sun Pipeline Company which was forwarded by Hood. In November of 1981, appellant Buffalo Pipeline Company acquired the lease from Sun Pipeline Company. Neither Sun Pipeline Company nor Buffalo Pipeline Company had been notified that appellees had not received the July, 1981, lease renewal rental payment until they were so notified by letter from appellees' attorney in December of 1981. Neither Sun Pipeline Company nor Buffalo Pipeline Company have ever directly tendered to appellees the $115

lease renewal rental payment, which was due in July of 1981. Additionally, neither Sun Pipeline Company nor Buffalo Pipeline Company have ever given notice of their desire not to renew the lease to either Hood or appellees.

The subject lease does not contain any provision regarding how effective notification of change of ownership should be given.

In its points of error 1 and 1a, appellant asserts that there was no evidence or, in the alternative, insufficient evidence to support the trial court's finding of fact that appellees had given Sun Pipeline Company *actual* notice of appellees' acquisition of title to the property; in addition, appellant argues that the trial court erred by impliedly concluding that said notice was legally *adequate* notice, which would require Sun Pipeline Company to deal with appellees as the new landlords.

In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L.Rev. 361 (1960).

■ After examining the entire record, we find that there is sufficient evidence to support the trial court's finding of fact that appellees gave Sun Pipeline Company *actual* notice of their ownership of the property. However, appellant also argues that, even though such *actual* notice may have been given by appellees to Sun Pipeline Company, such notice was not legally *adequate* notice. Appellant claims that it was incumbent on appellees to furnish Sun Pipeline Company proof or documentation of appellees' claim of ownership of the property before Sun Pipeline Company was required to deal with appellees as its new landlords. Appellees allege that the notice of ownership which was given to Sun Pipeline Company was sufficient absent a de-

mand made by Sun Pipeline Company upon appellees for supporting proof or documentation of their claim of ownership.

In *Cartledge v. Sinclair Refining Company,* 280 S.W.2d 312 (Tex.Civ.App.—Austin 1955, no writ), the Austin Court of Civil Appeals wrote:

The precise question presented is whether Sinclair had the sole responsibility for ascertaining the persons entitled to the rents without any aid or cooperation from any person asserting a right to such rents.

The parties have expressed inability to find any cases directly in point on this question and neither have we. By analogy, however, we believe that the rule applicable to bills and notes should furnish a guide here. The rule as found in 10 C.J.S., Bills and Notes, § 364, p. 884, is that "if the authority of a person presenting paper [for payment] is questioned by the maker or the acceptor, and refusal to comply with the demand is based on a supposed want of authority, such authority must be shown." Two cases are cited in support of this rule: Caine v. Foreman, 106 Cal.App. 636, 289 P. 929 and United States v. Schuermann, D.C.Mo., 106 F.Supp. 86, 89. In the latter case the Court said: "Protection of the maker of the note should be given serious consideration."

We believe that the protection given makers of bills and notes should be extended to lessors and that a person demanding rents should be required to identify himself as being the person entitled to them. This rule is not only in accord with business customs in innumerable analogous every day transactions but it is a rule of common courtesy as well. We believe it to be a sound rule of law.

In *Cartledge v. Sinclair Refining Company,* after Cartledge (the alleged new landlord) had given Sinclair (the lease tenant) actual notice of his new ownership of the property, Sinclair made a good faith demand on Cartledge to produce documentation of his alleged new ownership and sus-

pended payments of rents. The Austin Court of Civil Appeals held that, since Cartledge failed to provide such documentation, Sinclair was justified in suspending payments of rents as it did.

As in *Cartledge v. Sinclair Refining Company*, we believe that, by analogy, the standard, which is applicable to bills and notes regarding *adequate* notice of assignment, should furnish a guide here. For notice of assignment to be *adequate* or effective under the U.C.C., an account debtor must receive notice that the amount due or to become due has been assigned and must also be notified that payment is to be made to the assignee. TEX.BUS. & COMM.CODE § 9.318(c) (Vernon Supp. 1985); *see Haas Estate v. Metro-Goldwyn-Mayer, Inc.*, 617 F.2d 1136 (5th Cir.1980); *Taubenhaus v. Jung Factors, Inc.*, 478 S.W.2d 149 (Tex.Civ.App.—Houston [14th Dist.] 1972, no writ).

■ The general rule is that, after a debtor receives notice of a valid assignment, payment made by the debtor to the assignor or to any person other than the assignee is made at the debtor's peril and does not discharge the debtor from liability to the assignee. *East Texas Bank & Trust Company v. Mid-South Contractors, Inc.*, 451 S.W.2d 782 (Tex.Civ.App.—Tyler 1970, no writ). "A payment made by the obligor to his original creditor is fully operative in defense against an assignee if it was made in good faith without notice, actual or constructive, of the assignment. It is otherwise of payments made with such notice or with knowledge of facts sufficient to put the obligor on inquiry." *Olshan Lumber Company v. Bullard*, 395 S.W.2d 670 (Tex.Civ.App.—Houston 1965, no writ), quoting 4 Corbin on Contracts Section 890, p. 577; *see also Phillips v. Latham*, 523 S.W.2d 19 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.); *Chapman v. Tyler Bank & Trust Company*, 396 S.W.2d 143 (Tex.Civ.App.—Tyler 1965, writ ref'd n.r.e.).

■ We hold that, the *actual* notice given by appellees provided Sun Pipeline Company notice or knowledge of facts sufficient to put Sun Pipeline Company on inquiry to ascertain who was entitled to the lease rental payments. *See Olshan Lumber Company v. Bullard*, 395 S.W.2d at 672. Under *Cartledge v. Sinclair Refining Company*, Sun Pipeline Company would have been entitled to demand that appellees furnish documentation of their ownership; however, since Sun Pipeline Company chose not to do so but chose to deal with appellees' predecessor-in-title and not appellees, Sun Pipeline Company made the rental payment "at its own peril." *See East Texas Bank & Trust Company v. Mid-South Contractors, Inc.*, 451 S.W.2d at 784. We hold that the *actual* notice of ownership given by appellees was *adequate* notice until Sun Pipeline Company demanded proof or documentation of appellees' claim of ownership; then, it would have been incumbent upon appellees to supply such supporting proof or documentation. Appellant's points of error numbers 1 and 1a are overruled.

Appellant's second point of error asserts that the trial court erred in entering judgment, which declared that the lease was terminated, because Sun Pipeline Company timely and properly paid the lease renewal rental, thereby renewing the lease for another term.

The trial court found that Sun Pipeline Company mailed a check, the lease renewal rental payment, in the amount of $115.00 to E.J. Hood in July of 1981. The trial court also found that "Hood indorsed the $115.00 check received from Sun in July of 1981 and mailed it to Bill W. Bell, Sr., in Corpus Christi at an address used for prior correspondence" and that Bell never received the check.

■ Where payment of an obligation by mail is authorized, the mailing of a properly addressed letter including remittance with postage prepaid on the last day of payment is a timely payment. *McGowan v. Pasol*, 605 S.W.2d 728 (Tex.Civ.App.—Corpus Christi 1980, no writ); *Laredo Hides Company, Inc. v. H & H Meat Products Company, Inc.*, 513 S.W.2d 210 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd

n.r.e.). This rule also applies where an obligee accepts remittances by mail for an extended period of time without protest. *Parkview General Hospital, Inc. v. Ashmore,* 462 S.W.2d 360, 368 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.).

■ The subject lease has no provision for payment by mail, and there was no established custom or course of dealing between the parties. *See Id.* Absent these circumstances, the above rules regarding mailing of payments are inapplicable. Furthermore, "[a]t common law where no place of payment is specified or fixed by law the rule is that the tenderer must seek the tenderee and make a tender to him if he can be found by the exercise of due diligence." *Baucum v. Great American Insurance Company of New York,* 370 S.W.2d 863, 867 (Tex.1963). Having held that it was incumbent on Sun Pipeline Company to deal with appellees as its new landlords, we now hold that it was also incumbent upon Sun Pipeline Company to have made its tender of the lease renewal rental payment to appellees in person since it was not authorized to do otherwise. *See Id.* Therefore, Sun Pipeline Company did not timely and properly tender the lease renewal rental. Appellant's second point of error is overruled.

In its third point of error, appellant alleges the trial court erred in declaring that the lease was terminated because the lease renewal option clause required that, before the lease could be terminated, the lessee must have given notice of intent *not* to renew the lease, in addition to the non-payment of the lease renewal rental. Regarding such a requirement, the subject lease provided:

7.

It is further agreed that Lessee will have the right or option of extending or renewing this lease for additional periods of five (5) years, said right and option to continue for so long as Lessee may have need for the Two (2) acres for the use and purposes herein stated, upon the same terms and for the same annual rental payable in advance as stated in this lease. Said renewals or five (5) year extensions of this lease shall be considered as desired by Lessee upon the payment of the One Hundred Dollar ($100.00) annual rental payment in advance, prior to the expiration date of the preceeding five (5) year period, unless Lessee on or before thirty (30) days prior to the expiration date of the five (5) year period, notifies Lessors, their heirs or assigns that it does not desire to extend or renew the lease for an additional five (5) year period, and upon such notice the lease shall then terminate at the expiration of the five (5) year period then in effect.

The trial court found as a fact that neither Sun Pipeline Company nor appellant had ever given notice of a desire *not* to renew the lease.

We find that, although it is somewhat awkwardly drafted, the extension or renewal paragraph provides the following:

(1) If lessee does not desire to renew or extend the lease it must give notice of its intention not to renew or extend thirty (30) days before the termination of the primary lease period.

(2) If no notice of intention to renew or extend the lease is received by the lessor, then the lease will be automatically renewed or extended for another five (5) years.

(3) If the lease is automatically renewed or extended the annual rental payment is due in advance and is payable prior to the expiration date of the preceeding five year lease.

■ We hold that, under the above construction, the lessees' failure to give notice of its intention to terminate the lease triggered the automatic renewal or extension of the lease and that the payment of rentals in advance thirty (30) days later was a subsequent covenant of the extension of the lease and not a condition precedent of renewal or extension. The lease contained no express provision for forfeiture by appellants for non-payment of lease renewal rentals by the lessee. Since the

trial court found that such notice was not given, the trial court's judgment could only be based upon a forfeiture resulting from non-payment; and, for the reasons set out below, we hold that, because Sun Pipeline Company's non-payment did not work a forfeiture, the trial court erred in concluding that the lease had terminated.

■ Sun Pipeline Company's failure to pay the rentals when they were due did not work a forfeiture of its rights under its lease and did not entitle appellees to possession in the absence of an agreement to that effect. *Bertrand v. Pate*, 284 S.W.2d 802 (Tex.Civ.App.—Eastland 1955, no writ). In *Ewing v. Miles*, 12 Tex.Civ.App. 19, 33 S.W. 235, 238 (Tex.Civ.App.—1895, writ ref'd), the Court of Civil Appeals wrote that the law was "well settled that a breach of the covenant to pay rent does not breed a forfeiture of possession by the lessee, or a right of re-entry by the lessor, unless the contract provides for a forfeiture in the event of such failure." This common law rule is restated in *Shepherd v. Sorrells*, 182 S.W.2d 1009, 1011 (Tex.Civ. App.—Eastland 1944, no writ). "In the absence of a forfeiture provision the right to forfeit and re-enter will not lie for the failure to pay the rents. The remedy is for damages." *Dillingham v. Williams*, 165 S.W.2d 524, 526 (Tex.Civ.App.—El Paso 1942, writ ref'd w.o.m.).

■ In Texas, it is established that a lease will be most strongly construed against the lessor, *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784, 788 (Tex. 1966), though it has been stated that strict rules of construction obtain in the case of a perpetual right of renewal as we have here. *See Pickrell v. Buckler*, 293 S.W. 667, 668 (Tex.Civ.App.—El Paso 1927, writ ref'd).

In *Sirtex*, the instrument in dispute was a surface lease for oil production facilities which had a term that was co-extensive with an oil, gas and mineral lease. The lessor contended that the phrase "each succeeding year which Lessee desires to keep the surface lease in full force and effect" should be construed as a condition precedent. In construing the terms of the sur-

face lease, the Texas Supreme Court held that, since no voluntary choice to terminate the lease was exercised, the rental clause was a covenant to pay rent and nothing more, *Sirtex*, 403 S.W.2d at 787, and then repeated the following well-established rule: "In case of doubt as to the true construction of a clause in a lease, it should be held to be a covenant, and not a condition or limitation, as the law does not favor forfeitures." *Id.* at 787. In *Sirtex*, the Texas Supreme Court stated that the facts of the case "well illustrate why the law abhors a forfeiture" and further wrote that, under such conditions, equity should afford relief even if a condition rather than a covenant was involved. *Id.* at 788.

■ Comparing the subject lease to that set out in the *Sirtex* opinion, we conclude that the rental clause was a covenant and that the trial court erred in treating it as a condition precedent. Since there was no express stipulation in the lease of a power of re-entry or forfeiture, Sun Pipeline Company's breach of the express covenant to pay rent did not work a forfeiture; rather, Bell's remedy was merely an action for damages. *Grubb v. McAfee*, 212 S.W. 464, 467 (Tex.1919).

■ Furthermore, equity should afford relief against a forfeiture in this case. In applying equitable rules in order to prevent forfeiture of a lease based upon the failure to pay rentals to a person other than the person authorized to receive such rentals, the Texas Commission of Appeals in *Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265 (Tex.Comm.App.1939, opinion adopted), wrote:

"The case is one for the application of "overruling equitable rules." The action of defendants in error in making payment to Wynne instead of to plaintiff in error, if not caused, as it seems to have been in part at least, by the conduct of plaintiff in error, was not due to willful or gross negligence on the part of defendants in error, but was rather the result of an honest and justifiable mistake. The termination of the right to

take the timber would cause defendants in error to lose the value of more than two-thirds of the timber for which they paid and transfer that value to those, or the heirs of those, to whom full payment had once been made. We are unwilling to hold that a court of equity is without authority to prevent such unconscionable hardship."

The original lessee (Sun Pipeline Company) or its assignees (Buffalo Pipeline Company) have conducted continuous operations on the tract since 1936. In July of 1981, Sun Pipeline Company mailed a lease renewal rental payment check to E.J. Hood, who subsequently forwarded the check to appellees. According to appellee Bill Bell, Sr., Bell never received the check from Sun Pipeline Company which was forwarded by Hood. Also, after July 24, 1981, the expiration date of the lease, appellees allowed Sun Pipeline Company or Buffalo Pipeline Company to continue their possession of the lease. In addition, appellees did not notify either Sun Pipeline Company or Buffalo Pipeline Company that they had not received the lease renewal rental payment until December of 1981. In that letter, dated December 2, 1981, appellees did not state that the lease had been terminated but only indicated that appellees desired to renegotiate the terms of the lease. All the above leads us to conclude that for a significant period of time after the expiration date of the initial lease term, appellees treated the lease as having been extended or renewed and *not* as having been terminated. To force the lessee to move its tank battery, which it is allowed to do, would result in heavy expense and inconvenience. The equitable considerations set forth in *Jones v. Gibbs*, 130 S.W.2d at 273, are similar to those in this case and these "overruling equitable rules" prevent the limitation of appellant's lease. Appellant's third point of error is sustained.

In its fourth point of error, appellant asserts that, if forfeiture was permissible under the lease, appellees were estopped from denying that the lease was renewed and from asserting rights of forfeiture by having retained the rental payment, which

was untimely and improperly received and held by appellee. Since we have held that forfeiture was impermissible, we need not consider appellant's fourth point of error regarding waiver or estoppel.

We hold that the lease between the parties was not terminated by breach of the covenant to pay rent and that, consequently, no reasonable rental fees as damages for trespass to realty are recoverable. The judgment of the trial court is REVERSED and the judgment is here RENDERED that appellees take nothing. All costs of appeal are assessed against appellees.

Opinion published.

Opinion delivered and filed this the 21st day of February, 1985.

DORSEY, Justice, dissenting.

I concur in the Court's analysis and conclusions in response to appellant's points of error 1 and 2. However, I disagree with the analysis and disposition of appellant's third point involving the construction of the paragraph giving the lessee an option to renew the lease.

The critical sentence in the option paragraph is as follows:

Said renewal or five (5) year extension of this lease *shall be considered as desired by Lessee upon the payment of the One Hundred Dollars ($100.00) annual rental payment in advance,* prior to the expiration date of the preceding five (5) year period, unless Lessee on or before thirty (30) days prior to the expiration date of the five (5) year period, notifies Lessors, their heirs or assignees that it does not desire to extend or renew the lease for an additional five (5) year period.... (Emphasis added.)

To aid our understanding of the sentence, if we reverse the principal dependant clauses and simplify the sentence, the result is as follows:

Unless Lessee ... notifies lessor ... that it does not desire to extend or renew the lease ..., said renewal or five year extension of the lease shall be considered as desired by lessee upon the payment of

One Hundred Dollars as rental in advance....

The paragraph from the lease that is quoted in the Court's opinion is, by its own terms, a method by which the lessee exercises his option to extend or renew the lease. That paragraph gives the lessee the right to extend the term of the lease for an additional five-year period should the lessee desire. That desire is manifested by the payment of an annual rental in advance, unless the lessee notifies the lessor that it does not wish to renew the lease. The Court's reading of that option provision gives the lease a perpetual term in the absence of any action by the lessee. I construe such construction to be counter to the language of the paragraph wherein the lessor is required to express his desire to renew by performing an act. Absent the performance of that act, the "desire" to renew was not manifested in accordance with the agreement of the parties.

This option to renew is distinguishable from a lessee's option to terminate an automatically renewing lease, as in *Sirtex Oil Industries, Inc. v. Erigan*, 403 S.W.2d 784 (Tex.1966). The *Sirtex* lease expressly gave the lessor the right to end the lease should he desire prior to the expiration of the term, which was co-extensive with an oil, gas and mineral lease. It did not involve an option to extend or renew, but rather, the right of the lessee to terminate prior to the expiration of the lease. The Supreme Court properly held that a failure to pay rent could not be construed as the lessor's exercise of its election to terminate.

Other cases relied on by the Court are "notice" cases, where, in order to extend or renew the lease, the lessee was required to notify the lessor. The Courts have uniformly held that, when only notice is required by the tenant, a holding over by the tenant serves to notify the lessor that the right is being exercised.

*Jones v. Gibbs*, 133 Tex. 627, 130 S.W.2d 265 (Tex.Comm'n.App.1939, opinion adopted), is not on point because of the equities of the parties. A timber deed was made giving the grantee the right to remove timber during a 10 year period, with the right to extend that period in annual increments for a total of five additional years. The consideration paid for the deed was $26,520 and the renewal extension fee was nominal—$205.68. The grantee made the renewal extension payments to a third party at the request of the grantor, but contrary to the express wording of the deed. The Court held that, as little of the standing timber that was bought by the grantee had been removed, and the renewal fee was nominal in relation to the value of the timber and the initial consideration, not to allow the renewal would be to work a forfeiture by the grantee of an estate for which he had previously paid.

There is no evidence of equitable considerations in the instant case that would bring it under the rule of *Jones v. Gibbs*. It is not a purchase of standing timber for a fair consideration paid at the inception, but, rather, a surface lease for a time certain with the option of the lessee to renew if he performed a certain condition. I would hold that, as the condition was not performed by the lessee, the lease was not renewed.

That the condition to be met in order to renew was the payment of annual rental in advance should not be confused with the tenant's covenant to pay rent. The only portion of the lease to be construed is the quoted paragraph setting forth the means by which the tenant may exercise his option to renew or extend the lease. Indeed, the entire lease is not in evidence and its other terms, conditions or covenants are not germane to this decision.

The longstanding rule that an option is to be strictly construed, and the burden of meeting its condition is on the party wishing to exercise the option, is being disregarded by the Court's decision. *Zeidman v. Davis*, 161 Tex. 496, 342 S.W.2d 555 (1961); *Scott v. Vandor*, 671 S.W.2d 79 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Tidwell v. Lange*, 531 S.W.2d 384 (Tex.Civ.App.—Waco 1975, no writ);

601

*White v. Miller*, 518 S.W.2d 383 (Tex.Civ. App.—Tyler 1974, writ dism'd.).

The expiration of a leasehold estate under its own terms does not constitute a legal forfeiture in the absence of overriding equities.

Opinion ordered published. TEX.R.CIV.P. 452.

KENNEDY, Justice, dissenting.

I respectfully join with Associate Justice J. Bonner Dorsey's dissenting opinion.

Dissenting opinion published.

Tex.R.Civ.P. 452.