# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00301-CV

**First Trust National Association n/k/a U.S. Bank Trust National Association, Appellant**

**v.**

**First Heights Bank, FSB, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. 97-03905, HONORABLE PAUL DAVIS, JUDGE PRESIDING

First Trust National Association, now known as U.S. Bank Trust National Association ("First Trust"), appeals from a judgment favoring First Heights Bank, FSB ("the Bank"). The judgment concerned the disposition of the remnants of a reserve fund created as part of a trust indenture that ensured repayment of bonds issued to fund a construction loan. First Trust contends that the district court erred by granting an underlying partial summary judgment ruling that First Trust should have paid the reserve fund remnants to the Bank. First Trust contends that the trust indenture required First Trust to pay the reserve fund to La Mesa Grande, Inc. ("LMG," a party below that did not appeal the judgment) and prohibited the assignments through which the Bank claimed entitlement to the reserve fund. We will affirm the judgment.

**BACKGROUND**

First Trust is the successor trustee to MTrust in a trust indenture and a deposit and loan agreement that were created in 1989 to fund three residential developments, including the La Mesa Grande Apartments. The parties to the indenture were the County of El Paso Housing Finance Corporation ("the HFC") and MTrust. The loan agreement involved those two parties, Surety Savings Association, the lender, and three developers, including Associated Investment Company of El Paso, Texas ("Associated"). The HFC issued bonds to fund a loan from Surety Savings to the developers. The indenture charged the trustee to create and administer a reserve fund to ensure repayment of the loan. Upon payment of all bonds and other obligations, the trustee was required to deliver any amounts remaining in the reserve fund to the developers.

The agreements contained clauses governing whether and how their terms could be altered. The loan agreement specified that its terms could not be altered without written consent of the parties including the trustee; among its terms was the developers' agreement to be bound by all the provisions of the indenture pertaining to the reserve fund. The indenture prohibited the issuer from assigning any portion of the trust estate, which included the reserve fund.

The parties interested and involved in the project changed in the early 1990s. The Resolution Trust Company was appointed the receiver for Surety Savings. In a 1993 reconfiguration of the projects, First Trust became the trustee and the bond debt was split among the three residential projects. In 1994, Associated sold the La Mesa Grande Apartments project to LMG, which assumed Associated's obligations under the loan agreement and indenture as a developer. LMG, in a document signed by its president, Gordon Granger, however, had in 1993 assigned its interest in

2

receiving the reserve fund to Associated and waived any right to receive the proceeds. Associated in turn assigned its interest in receiving the fund to Mortgage Investment Company of El Paso ("MICO"). MICO then assigned its interest in receiving the fund to the Bank.

First Trust was not consulted regarding and did not consent to the assignments of the reserve fund. On September 29, 1995, the bonds were paid off and First Trust paid the reserve fund to Granger at LMG as he was directed to do by LMG and Granger.

The Bank sued First Trust, Granger, and LMG, alleging that the assignments entitle it to the reserve fund. The district court signed three partial summary judgments. In the first, it held that First Trust was liable to the Bank for releasing the reserve fund to Granger and LMG. In the second, it held that First Trust should recover from Granger and LMG in the amount First Trust is ordered to pay damages to the Bank. In the third, the court determined the amount of the Bank's recovery. The district court then signed a final judgment in which it granted judgment in favor of the Bank against all defendants in the amount of $70,261.41, awarded the Bank $30,303.24 in attorney's fees against LMG and Granger, and awarded the Bank $20,000 in attorney's fees against First Trust. The district court also essentially indemnified First Trust by ordering Granger and LMG to pay First Trust whatever amount of the judgment First Trust paid to the Bank (up to $70,261.41 plus $20,000 in attorney's fees). Only First Trust appeals.

## DISCUSSION

When reviewing a summary judgment, we must determine whether the defendant established that no genuine issue of material fact exists and that judgment should be granted as a matter of law. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 675-79 (Tex. 1979).

We view the evidence in the light most favorable to the non-movant, indulging all reasonable inferences and resolving any doubts in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). Texas courts have long held that the interpretation of an unambiguous contract is a question of law that is proper for summary judgment. *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). Because unambiguous contracts are to be construed as a matter of law, we need not defer to the district court's interpretation of the documents. *See Maxfield v. Northwood Homes, Inc.*, 582 S.W.2d 588, 589 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.).

First Trust asserts by two issues on appeal that the district court erred by rendering judgment in favor of the Bank. It is undisputed that section 13.01(a) of the indenture required First Trust to take the funds remaining in the reserve fund after the payment of the bond obligations and related expenses and surrender them to the developers. This case concerns whether the developers could assign their right to collect the reserve funds and whether First Trust could or was required to honor those assignments. The dispute on appeal is over the developers' right and power to make the assignments, not over any deficiencies in the assignments themselves. First Trust contends that the assignments under which the Bank claims entitlement to the reserve fund were prohibited by the indenture and loan agreements and therefore void. First Trust contends that the indenture required it to pay the reserve fund to LMG.

First Trust contends that the loan agreement and indenture prohibited assignment of the right to receive the reserve fund proceeds without the consent of the trustee. Section 8.05 of the indenture provides as follows:

4

The Issuer [HFC] will not, except in accordance with this Indenture, enter into any amendment of the Agreement or waive any provisions thereof and any such purported amendment or waiver shall be void and of no force and effect; and, except for the assignments to the Trustee herein, the Issuer will not sell, transfer or otherwise dispose, assign or encumber its interest in any part or all of the Trust Estate and any such purported sale, transfer or other disposition, assignment or encumbrance shall be void and of no force and effect.

Section 6.03(a) of the indenture defines the reserve fund as part of the trust estate. In section 4.07 of the loan agreement, the developers "expressly agree to the provisions pertaining to the Reserve Fund and the Refunded Bonds Reserve Fund contained in the Indenture, including without limitation Sections 6.01(c) and 6.03 thereof, and agree to be bound thereto." Section 8.01 of the loan agreement provides that no modifications to the loan agreement can be made without the prior written consent of the issuer, the trustee, the lender, and the developers. A debtor with notice of a valid assignment who nevertheless pays the debt to the originally designated recipient does not thereby discharge the debtor's obligation to the assignee. *See BOC Group, Inc. v. Katy Nat'l Bank*, 720 S.W.2d 229, 230-31 (Tex. App.—Houston [14th Dist.] 1986, no writ). First Trust argues, however, that these assignments to which it did not consent were void under the indenture and could not alter First Trust's obligations, regardless of notice.

The Bank responds that the indenture's restrictions on assignments by issuers did not bind the Bank and its predecessors in interest because they succeeded to the rights of developers, not issuers. Though the developers were not signatories to the indenture, in section 2.04(d)(v) of the loan agreement they acknowledged reviewing and approving the terms of the indenture and promised that "whenever the Indenture by its terms imposes a duty or obligation upon the Developer, such duty or obligation shall be binding upon the Developer to the same extent as if the Developer were an

5

express party to the Indenture . . . ." The indenture refers to the developers in several sections. The Bank argues that the failure of the indenture to bar developers from assigning their interest in the reserve fund means there is no such restriction.

We conclude that the non-assignment clause contained in the indenture did not apply to or restrict developers. Section 8.05 of the indenture expressly prohibits the issuer from assigning its interest in the reserve fund. By contrast, the indenture (including section 13.01) is silent regarding the right of the developers to assign their interest in receiving the remains of the reserve fund. The developers' agreement in section 4.07 of the loan agreement to be bound by the provisions of the indenture does not mean that they assumed the rights, obligations, or restrictions imposed upon other parties; in other words, although the developers expressly agreed that the issuer could not assign its interest in the reserve fund, they did not additionally agree that the developers could not assign their interest in the fund. We hold that the developers did not in the loan agreement agree to restrict their rights under the indenture in any way that the indenture did not already expressly restrict their rights.

Because the developers were free to assign their rights to the reserve fund, their successors in interest could do likewise. Without a successful challenge to the assignments, the Bank was entitled to the proceeds of the reserve fund. That does not necessarily mean that the Bank was entitled to receive payment directly from First Trust, however.

First Trust contends that the indenture required it to pay the reserve fund to LMG and not to the Bank. First Trust notes that indenture section 13.01 requires it to pay the reserve fund to the developer and that, according to the assumption agreement, LMG was the developer. First Trust

6

contends that it therefore could rely on Granger's representations that LMG was entitled to the funds;

indenture section 10.06(a) provides as follows:

> The trustee shall be protected and shall incur no liability in acting or proceeding in good faith upon any resolution, notice (whether written or telephonic), telegram, request, consent, waiver, certificate, statement, affidavit, voucher, bond, requisition or other paper or document which it shall in good faith believe to be genuine and (i) have been passed or signed by the proper Person or (ii) have been prepared and furnished pursuant to any of the provisions of this Indenture or the agreement, and the Trustee shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument, but may accept and rely upon the same as conclusive evidence of the truth and accuracy of such statements.

First Trust presents uncontroverted evidence that Granger and LMG told First Trust that LMG was

entitled to the reserve fund as developer. First Trust contends that it had no duty to investigate these

assertions and no choice but to pay the reserve fund to LMG.

The Bank, however, contends that it notified First Trust of its claim, triggering First

Trust's obligation to inquire. The general rule is as follows:

> [A]fter a debtor receives notice of a valid assignment, payment made by the debtor to the assignor or to any person other than the assignee is made at the debtor's peril and does not discharge the debtor from liability to the assignee. *East Texas Bank & Trust Company v. Mid-South Contractors, Inc.*, 451 S.W.2d 782 (Tex. Civ. App.—Tyler 1970, no writ). "A payment made by the obligor to his original creditor is fully operative in defense against an assignee if it was made in good faith without notice, actual or constructive, of the assignment. It is otherwise of payments made with such notice or with knowledge of facts sufficient to put the obligor on inquiry." *Olshan Lumber Company v. Bullard*, 395 S.W.2d 670 (Tex. Civ. App.—Houston 1965, no writ), quoting 4 Corbin on Contracts Section 890, p. 577; *see also Phillips v. Latham*, 523 S.W.2d 19 (Tex. Civ. App.—Dallas 1975, writ ref'd n.r.e.); *Chapman v. Tyler Bank & Trust Company*, 396 S.W.2d 143 (Tex. Civ. App.—Tyler 1965, writ ref'd n.r.e.).

*Buffalo Pipeline Co. v. Bell*, 694 S.W.2d 592, 596 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). A vice president of the Bank averred without controversion that First Trust knew at least six months before it disbursed the reserve fund to LMG that the Bank claimed entitlement to the reserve fund. The affiant notes that First Trust sent statements to the Bank regarding monies in the reserve fund; she avers that this shows that First Trust knew that the Bank claimed the right to the reserve fund. Evidence shows no link between the Bank and the reserve fund other than the assignments; there is no explanation in the record of why First Trust would send the Bank the reserve-fund statements other than First Trust's knowledge of the assignment.

We conclude that the evidence of conflicting claims meant that First Trust could not in good faith and without investigation accept LMG's representations that it had the right to the reserve fund. Investigation would have revealed the assignments that redirect First Trust's payments. Under the assignment from LMG to Associated, LMG through Granger, its president, waives its rights to the reserve fund and expressly "directs FIRST TRUST to pay the Reserve Fund and all interest accrued or accruing thereon to Assignee [Associated]" and appoints Associated as its attorney-in-fact to demand, receive, and enforce LMG's rights with respect to the reserve fund and to do all acts in LMG's name or its own name in connection with the reserve fund with the same force and effect as LMG could do but for the assignment. The assignments from Associated to MICO and from MICO to the Bank transfer the same rights to their respective assignees.

We note that the district court's judgment that First Trust have judgment against LMG and Granger for all amounts that First Trust pays to the Bank (including attorney's fees) means that

8

the court at least theoretically held First Trust harmless for its payments to LMG and Granger unless and to the extent that LMG and Granger do not reimburse First Trust.

## CONCLUSION

Because we conclude that First Trust has not shown any error warranting reversal, we affirm the district court's judgment.

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: January 10, 2002

Do Not Publish

9